**In re Gordon James FRISCH, Debtor.**

**FIRST TRUST COMPANY, Movant,**

**v.**

**Gordon James FRISCH, Respondent.**

**Bankruptcy No. 86 B 12310 E.**

United States Bankruptcy Court,
D. Colorado.

July 27, 1987.

Milnor H. Senior III, Denver, Colo., for debtor.

Adam M. Golodner, Moye, Gilles, O'Keefe, Vermeire & Gorrell, Denver, Colo., for First Trust Co.

## DECISION AND ORDER DENYING FIRST TRUST COMPANY'S MOTION TO DISMISS

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.[*]

Heard on July 6, 1987, on the debtor's objection to the motion of First Trust Company [1] of Saint Paul, Minnesota, a creditor, to dismiss the case pursuant to 11 U.S.C. §§ 105 and 707(a).

First Trust argues that the debtor's case was not filed in good faith. In its motion First Trust alleges that the debtor has sufficient income to pay the debt owed to it, under a Chapter 13 plan, and suggests various ways in which the debtor can change his "lifestyle" to effect the savings needed to fund a Chapter 13 plan. The only approach First Trust has not taken is

to file a motion to convert to Chapter 13, probably because that option is available only to the debtor. 11 U.S.C. § 706(c). In order to avoid the impediment of § 706, the creditor urges us to dismiss the case "for cause." First Trust has also filed a complaint, A.P. No. 87–E–304 which seeks a determination that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6), and has made that complaint an exhibit to its motion to dismiss.

First Trust presented extensive testimony from the debtor, from Ginger (Swanson) Miller, debtor's former wife, from Mary Crouchet, his present wife, and from Leonard Ilgus, an employee of First Trust. The testimony of the debtor and Mr. Ilgus establishes that Frisch had acknowledged a debt to the Swanson Trust totaling $71,000 and had executed a promissory note for that amount. The note represented debts both for business transactions and for private borrowings from Swanson, and anticipated that the debt would be paid from the proceeds of the sale of the debtor's home in Parker, Colorado. The note also provided that Frisch would execute a second promissory note for any unpaid balance due after the sale. Frisch expected said balance to be about $16,000, which he would then borrow to pay off the second note. However, in attempting to sell the Parker property, Frisch fell victim to the downturn in the Colorado economy, a factor he could not control, and he had to consider offers considerably lower than anticipated when he signed the promissory note. When the house finally sold for far less than the debtor expected, the amount needed to pay Swanson off doubled, and Frisch was unable to borrow that amount. Thereafter, he began negotiations with First Trust to arrive at a compromise, and suggested the sum of $23,217, to be paid in monthly installments, with interest at nine percent, amortized over seven years. This compro-

[*] Of the District of Rhode Island, sitting by designation.

1. While First Trust is the movant in the instant proceeding, it does so as trustee for the Swanson Family Trust which was established with First Trust by Jerome F. Swanson, debtor's former father-in-law. Debtor obtained no money, property, or services from First Trust which is asserting its rights as assignee of the Swanson interests.

mise foundered when First Trust demanded the bulk of the funds in a lump sum, which Frisch was unable to obtain. First Trust also rejected debtor's lump sum counter-offer of $10,000 in full settlement. Thereafter, on December 18, 1986, Frisch filed his Chapter 7 petition.

First Trust argues that the debtor's present income, together with the modifications it suggests in debtor's standard of living, would result in substantial disposable income and would leave Frisch with sufficient cash to fund a Chapter 13 plan. First Trust also argues that since the debtor could fund such a plan if only he would follow First Trust's prescription, his entire bankruptcy rests on bad faith. Alternatively, according to First Trust, since the debtor refuses to avail himself of Chapter 13, he should be precluded from using Chapter 7, and the case should be dismissed.

■ First Trust's reasoning requires such an expansive reading of "cause" under § 707(a), that creditors could dictate under which chapter a debtor should file, by exerting the pressure of a motion to dismiss. In effect, First Trust asks us to either require the debtor to file an involuntary Chapter 13 case, or to dismiss his Chapter 7 case, thereby denying him the right to file for bankruptcy. We do not have that power. *See* 11 U.S.C. §§ 303(a), 706(c), 1307(a). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess., 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6336 ("The section [707(a) ] does not contemplate ... that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory Chapter 13, in lieu of the remedy of bankruptcy").

■ Refusal to consider Chapter 13 when the debtor has the ability to repay debts is one possible ground for considering dismissal under § 707(b) when it is coupled with some other "egregious circumstance." *In re Shands,* 63 B.R. 121, 124 (Bankr.E.D.Mich.1985). First Trust urges us to consider the factors used by courts under § 707(b) as indication of this

debtor's bad faith under § 707(a). However, this argument runs afoul of the plain language of § 707(b). To begin with, the evidence shows that the debt owed to First Trust stems both from business transactions between Swanson and Frisch, and from intra-family loans, and not "primarily consumer debt[ ]" as required by the statute. Although the term "consumer debt" is defined as "debt incurred by an individual primarily for a personal, family or household purpose," 11 U.S.C. § 101(7), the legislative history of § 707(b) shows (surprisingly) that Congress was concerned with protecting the consumer credit industry. *See In re Grant,* 51 B.R. 385, 389–390 (Bankr. N.D.Ohio 1985). Even for the unspecified portion of the debt which represents loans from Swanson, First Trust has failed to provide any authority for the proposition that intra-family loans constitute consumer debt. Second, even absent the "presumption in favor of granting the relief requested by the debtor" (which, of course, we cannot ignore), there is no basis for a finding that "the granting of relief would be a substantial abuse of the provisions of" Chapter 7, 11 U.S.C. § 707(b). Neither are we unmindful that (1) the business loans were for the joint benefit of the debtor and Jerome Swanson, his father-in-law, and (2) the personal loans were for the mutual benefit of the debtor and Swanson's daughter and grandchildren. Third, and we think most important, is the manner in which First Trust seeks relief. It asks us to take the considerations relevant to § 707(b) and apply them to a motion to dismiss under § 707(a). First Trust does not, however, address the fact that a party in interest is not allowed to bring a motion under § 707(b) ("the court, on its own motion or on the motion of the United States Trustee, but *not at the request or suggestion of a party in interest* may dismiss a case") (emphasis added). The United States Trustee is operating in this district and has not brought a motion to dismiss. First Trust argues that there is substantial abuse in the debtor's petition, and proceeds from there to the conclusion that "cause" exists for dismissal under § 707(a). To agree with that conclusion would be to

ignore § 707(b) which prevents a party in interest from asking for dismissal. We have already stated that we find no "substantial abuse" of Chapter 7 in the debtor's petition, and we may not open the door for this creditor under § 707(a) where Congress has closed it under § 707(b).

For the foregoing reasons, the motion to dismiss is denied, with prejudice.

Throughout the lengthy hearing, debtor's attorney objected to the admission of much of the evidence presented by First Trust, on the ground that what was being offered was more relevant to the pending complaint under § 523, than to the motion to dismiss. Movant's attorney argued repeatedly that the evidence was relevant to the dismissal motion, and by representing that his evidence on the § 523 complaint would be additional to and distinct from the evidence being offered on July 6. While recognizing that the proffered evidence was clearly relevant to the dischargeability issue, we admitted it here on the ground that it was also relevant to the motion to dismiss. In giving the movant such wide evidentiary latitude, however, it is clear that most of the evidence relating to dischargeability has already been presented, and, in the interest of judicial economy, the parties are ordered to include the record established on July 6, in the trial on A.P. No. 87–E–30. The parties may add whatever new evidence they have, beyond what was admitted at the instant hearing, but we hold that the facts presented at this hearing constitute evidence relevant to the issue of dischargeability. We note that the debtor has met his burden of proof in establishing the good faith of his Chapter 7 petition, and, conversely, that First Trust has failed to prove bad faith under the more lenient preponderance of the evidence standard. In this district on issues of dischargeability, the burden of proof is clear and convincing evidence. *Enterprise Na-*

*tional Bank v. Zakovich (In re Zakovich),* 72 B.R. 271, 273 (Bankr.D.Colo.1987). As unsolicited dictum, on the record before us, and without substantial additional evidence which would elevate the plaintiff's case to meet the clear and convincing standard, we would find that the debt is dischargeable.

■ As we have stated, the debtor has met his burden of establishing good faith. The evidence does not establish bad faith, and much of the evidence presented by First Trust is most relevant to its dischargeability complaint, where the creditor will have a second try at this debtor. First Trust has presented no evidence pertaining to the examples of "cause" enumerated in § 707(a), which admittedly are not exhaustive. However, what First Trust has done is to present evidence which it contends shows the ability to fund a Chapter 13 plan, argues that this ability renders the Chapter 7 filing abusive, a § 707(b) concern, and relying too heavily on § 105, equates that with the debtor's "bad faith." Since First Trust would find "bad faith," it argues that "cause" exists for dismissal under § 707(a). The evidence does not support First Trust's position, and the Code does not allow us to mix and match sections of the statute, that is, § 707(b) issues using evidence most relevant to § 523 to find § 707(a) "cause," all under the penumbra of § 105, in order to reach the result this creditor desires. Since this creditor has intentionally subjected the debtor to a sort of quasi-criminal double jeopardy,[2] without good cause, and in light of our conclusion that this motion is not well grounded in either fact or law, First Trust is ordered to pay the debtor's legal fees in the amount of $750.00, for this needless duplicitous litigation.[3]

---

**2.** The dispute between these parties should have been disposed of in a single, fully litigated dischargeability trial. Any court burdened with the filings and case backlog as this one should not have to provide a battle-ground for the continuing, post-marital legal skirmishing between the debtor and his former wife.

**3.** The hearing on this matter exceeded two hours in length. Moreover, since the case was on a trailing docket, the debtor's attorney was required to be in attendance until the case was called. Total court time of five hours is a conservative estimate of Mr. Senior's time on July 6 and does not include time spent replying to the motion or any associated discovery. We feel

that a reasonable rate for such an appearance is $150 per hour.