**In re MAIDE, Orland M., Debtor.**

**Bankruptcy No. 88–02133.
Motion No. 88–7144–M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 8, 1989.

Kimberly McDaniel, Pittsburgh, Pa., for Equibank.

Daniel L. Sautel, Pittsburgh, Pa., for debtor.

Joseph E. Schmitt, trustee, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter before the court is a motion to dismiss the bankruptcy case of Orland M. Maide (hereafter Debtor) filed on behalf of Equibank.

Equibank contends that the case should be dismissed pursuant to 11 U.S.C. § 707(a) because the Debtor did not file his petition in good faith. In support of this contention Equibank points out the following facts which are not disputed.

Pursuant to what is designated a Private Line Agreement dated July 3, 1984, Equibank, a commercial lending institution, lent Debtor $25,000.00. At the time Equibank filed its motion to dismiss, the debt had increased to $26,832.91 plus interest from November 17, 1988, costs and attorney's fees.[1] Debtor filed a voluntary Chapter 7 petition on August 12, 1988. Eighteen months pre-petition Debtor transferred to his estranged wife, for no consideration, entireties property consisting of the marital

---

1. The credit line was secured in part by a 1982 Pontiac Phoenix with respect to which Equibank was granted relief from stay on December 13, 1988.

residence with a fair market value of $110,-000.00 encumbered by a mortgage with a balance of approximately $2,100.00. The mortgage is the only debt listed as secured [2] in the petition. Debtor is the sole borrower on the credit line and, so long as the property was held by the entireties, Equibank could not reach the residence to collect on this debt. Despite the transfer, Debtor pays the mortgage although he does not reside in the home.

Debtor has approximately $74,500.00 of unsecured debt. At the first meeting of creditors, Debtor testified he intended to reaffirm all of that debt except for the $25,000.00 owed to Equibank. At the hearings on the instant motion Debtor's counsel reiterated Debtor's intention to repay all the debts except the Equibank [3] line of credit which Debtor indicated he obtained and used for business purposes.[4]

■ Section 707(a) provides:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees or charges required under chapter 123 of title 28; and (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

The plain language of the introductory phrase establishes that the list of actions by a debtor which may constitute cause for dismissing a case under § 707(a) is not exclusive. *See also In re Cecil,* 71 B.R. 730, 733 (Bankr.W.D.Va.1987), citing Notes of Committee on the Judiciary, H.R.Rep. No. 595, 95th Cong. 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6336. Thus the question arises as to what "cause" may be. When the allegation, as in this motion, is that "cause" is founded on a bad faith filing, each case must be examined on its own facts.

■ Other courts have addressed portions of the arguments raised by Equibank. In those cases, a debtor's stated intention to repay all creditors except one has been held to be insufficient cause to dismiss under § 707(a) as has the fact that a debtor is able to pay his debts or filed bankruptcy to avoid only a single debt. *See In re McStay,* 82 B.R. 763 (Bankr.E.D.Pa.1988); *In re Latimer,* 82 B.R. 354 (Bankr.E.D.Pa. 1988). *See also* H.R.Rep. No. 595, 95th Cong. 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5880, 6336; *In re Cecil,* 71 B.R. 730 (Bankr.W.D.Va. 1987); *In re Frisch,* 76 B.R. 801 (Bankr.D. Colo.1987); *In re Beck Rumbaugh Associates, Inc.,* 49 B.R. 920, 922 (Bankr.E.D.Pa. 1985).

The facts of the instant case, however, establish cause to dismiss. In the cases cited above, only one factor was present in each. In the matter at issue all of those factors are present as well as a host of others not addressed in the enumerated cases. This Debtor is a man whose income exceeds $5,050.00 a month, who is freely

2. Because of the transfer, although Debtor may yet be an obligor under the mortgage, he has no collateral securing the obligation.

3. The Statement of Intention filed in this case states only that a debt to Meritor Corp. will be reaffirmed. This has not been done; the only debt reaffirmed is an unsecured obligation to Kaufmann's Department Store. Although reaffirmation agreements need not be executed, Debtor's counsel repeatedly stated Debtor's intent to reaffirm all debts except Equibank's.

4. Equibank contests Debtor's characterization of the debt as a business debt inasmuch as the credit line is entitled "private line" and Debtor never indicated a business purpose in obtaining

the credit. There was no evidence presented to aid in determining the true nature of the debt. The issue of consumer versus business debt is not necessarily dispositive in § 707(a) actions but is critical in § 707(b) actions. Although Equibank did not raise § 707(b), as indeed it could not have as a party in interest, the point was discussed by the Trustee and the United States Trustee in their reports to the court analyzing whether the debts listed in the schedules are "primarily consumer debts". *On the state of the record,* even if we were to find that the obligation to Equibank were a consumer debt, the majority of the other debts are acknowledged to have had a business purpose.

spending and who is paying all the expenses of his estranged wife, including the mortgage on her house,[5] in lieu of his own creditors. It would be grossly unfair to all the creditors in this case if Debtor's personal obligations were discharged while he continues to pay debts of another. The Code was not intended to eradicate personal obligations so that funds would be available for use of another.

Equibank also alleged that Debtor had removed assets from the estate, constituting further cause for dismissal. The asset purportedly removed was the real estate and this was accomplished eighteen months prepetition. Debtor acknowledges the transfer and concedes that it was made without consideration. The fact that the transfer of an asset with a net value of approximately $108,000.00 ($110,000.00 market value less $2,100.00 due on mortgage) was made for no consideration to a co-obligor nondebtor spouse and the fact that it left the Debtor with insignificant assets of nominal value indicates a lack of good faith and militates for dismissal of this case for cause pursuant to § 707(a) of the Bankruptcy Code, whether or not the statute of limitations on the avoidance of a fraudulent transfer has passed. See, 11 U.S.C. § 548; 39 P.S. § 351 et seq. We note that Debtor claimed the federal exemptions on Schedule B–4. If the real estate had not been fraudulently transferred, the realty would have come into the estate and would have been subject to the adversary sale procedures of 11 U.S.C. § 363(b), to divest the nondebtor spouse's interest. The Debtor's portion of proceeds would then be available, after any exemption, for distribution to all unsecured creditors, including Equibank. In view of his income, all this could be accomplished with-out leaving this Debtor destitute or a public charge. See In re Clark, 711 F.2d 21, 23 (3d Cir.1983) (purpose of exemption laws is to protect debtor so he "will not be left destitute and a public charge") (citing legislative history). Further, such an event would foster the purposes of the Code in marshalling Debtor's assets, converting them to cash and distributing them in satisfaction of his creditors' claims while giving Debtor a fresh start with such exemptions and rights as the statute allows. Burlingham v. Crouse, 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920 (1913).

There are other indications of lack of good faith by this Debtor. Debtor failed to account for all his assets and liabilities properly despite verbal direction from the court at a hearing on January 10, 1989, a court order dated January 12, 1989, and requests by the Trustee. He also filed amendments without listing all of the information ordered to be included.

First, Debtor's pension has not been identified as an asset nor as a source of income in the schedules or statement of affairs. Debtor contends that he does not need to disclose the pension because it is exemptible. Whether or not it is exemptible is not before the court at this time but we find that its existence and amount must be disclosed. All interests of a debtor in any property whatsoever must be listed in the bankruptcy schedules. See In re Graham, 726 F.2d 1268, 1271 (8th Cir.1984) (all property of debtor, even property needed for a fresh start, is included in the estate and then may be exempted); In re Goff, 706 F.2d 574, 579 (5th Cir.1983) (property exempted pursuant to § 522 initially enters the estate and is subsequently excluded); 11 U.S.C. § 522(d)(10)(E).[6] If a debtor is in

---

5. These expenses have not been properly accounted for in Debtor's schedules despite repeated directives from the court.

6. Debtor is receiving income of over $650.00 monthly as a pension and has not asserted a spendthrift trust clause under 11 U.S.C. § 541(c)(2). Even if he had, the trust still would have to be disclosed in the Statement of Affairs and/or Schedules as applicable. Section 541(c)(2) merely provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable bankruptcy law is enforceable in a case under" title 11. This does not indicate that the trust funds are excluded from disclosure, and income from the trust clearly is a factor to be considered in determining, inter alia, how much of a pension is necessary for support. To exclude consideration of the pension would render § 522(d)(10)(E) providing for limited exemption of retirement funds meaningless. Accord In re Swanson, 873 F.2d 1121, 1124 (8th Cir.1989).

error concerning whether or how much of a pension is exemptible, disclosure is the safeguard which will trigger scrutiny and prompt a definitive resolution. *See, e.g.,* 11 U.S.C. § 522(d)(10)(E) (pensions exempt to the extent reasonably necessary for support).

Moreover, a previous amendment to Schedule B–4 exemptions filed pursuant to the order of January 12, 1989, does not claim the pension as exempt. *See* Motion No. 88–7144–M, docket entry No. 21. Absent such a claim there is not even a prima facie case for exemption made. Section 522(*l*) provides that "[t]he debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt." Bankruptcy Rule 4003(a) also provides that the "debtor shall list the property claimed as exempt...." The Trustee or creditors may object and have the burden of proving that the exemptions are improper. Bankruptcy Rule 4003(b), (c).

■ Furthermore, Debtor has breached his duty to cooperate with the Trustee, including answering questions and providing requested information regarding property, even property which Debtor may claim as exempt. 11 U.S.C. § 521(1), (3), (4). This Debtor has failed in his duty by filing incomplete schedules and by inadequately amending them as ordered by the court and as requested by the Trustee.[7]

The Bankruptcy Code was designed to give a fresh start to the honest but unfor-

tunate debtor. "Honesty" is defined in Webster's II New Riverside University Dictionary (1984 ed.) as "the quality of truthfulness and probity combined with overall moral excellence <*honesty* in all business dealings>" and necessarily includes at least a modicum of good faith. With the enactment of the 1978 Bankruptcy Code, the dischargeability of debts was greatly liberalized but in 1984 the Code was amended. *In re Grant,* 51 B.R. 385 (Bankr.N.D. Ohio 1985), examined the legislative history of the amendments and concluded that

> Legislative history suggests that Congress was determined to reduce the number and amount of consumer debts which are annually discharged by debtors who are able to repay a significant portion of their debts, yet continue to guarantee the truly needy a "fresh start." ... The truly needy will be given the "fresh start" envisioned by the 1978 Act, yet the abusers will be denied a "head start."

*Id.* at 392. Other cases have examined debtors' ability to pay in a § 707(b) context in apparent recognition of Congress' shifting intent. *See, e.g., In re Kelly,* 841 F.2d 908 (9th Cir.1988).

Although the court in *Grant* was dealing with a § 707(b) question in examining the debtor's future income potential, it referred to § 707(a) "cause" and noted that consideration of a debtor's ability to pay creditors was in apparent contravention of the 1978 legislative history but not that of the 1984 amendments. The court pointed out that "Congress is pulling in the reins" with respect to debtors' advantages under the Code and that the 1984 amendment to § 707 "thwarts this legislative history" in that debtors must now file a statement of current income and expenditures and must

---

7. Although certain information required to be disclosed can be found somewhere in the file, we require all of it to be revealed in the Schedules or Statement of Affairs, as applicable. Neither creditors nor the court should have to search the entire record or depose a debtor and piece together bits of information in order to obtain a complete picture of debtor's situation. That is the function to be performed through detailed and accurate completion of the schedules and statements. Moreover, those amendments which were filed do not contain the req-

uisite specificity. *See, inter alia,* Schedule A–3 which designates only an account number as consideration and fails to indicate the joint obligation of his wife; B–2 which contains no detail regarding property owned by Debtor which is valued at more than $3,000.00; and the original and amended Statements of Current Income and Expenditures which contain significant unexplained differences in expenses and are not identified as to which are Debtor's and which are his wife's.

be informed by their attorneys and the Clerk of the Bankruptcy Court of the availability of filing under various chapters. 51 B.R. at 392 and n. 8. *See also* 11 U.S.C. § 342(b); Official Bankr.Form No. 1, Pub.L. 98–353, § 322, 11 App. (July 10, 1984); Official Bankr.Form No. 1, Exh. B, Pub.L. 99–554, § 283(aa), 11 App. (Oct. 27, 1986). *Cf., In re Cecil,* 71 B.R. 730 (Bankr. W.D.Va.1987) (ability to pay debts, in and of itself, is not § 707(a) cause in a case where debtors were laboring under unfortunate circumstances); *In re Frisch,* 76 B.R. 801 (Bankr.D.Colo.1987) (ability to pay insufficient cause where creditor attempted to equate § 707(a) "cause" with § 707(b) "substantial abuse").

This Debtor has an income in excess of $60,000.00 per year and has the ability to pay his debts from this source alone. He also would have had the ability to repay but for the fact that he removed significant equity in his residence beyond the reach of his creditors. The fact that he may have done so outside the fraudulent transfer period of the Code does not negate our finding that the action indicates his bad faith in subsequently filing the bankruptcy petition.

Debtor is not unfortunate financially and there have been no allegations of ill health, calamity or other hardship. The only impediment to Debtor's paying his creditors is that doing so would interfere with his ability to spend money as desired. Voluntary repayment is not forbidden by the Bankruptcy Code, *In re Frisch,* 76 B.R. at 803, but neither is the right to choose the recipients of such largesse unrestricted. *See In re Kobulnicky,* 64 B.R. 315 (Bankr.W.D. Pa.1986) (Debtor repaid loan from daughter which had been incurred to pursue education; Debtor's moral obligation to repay her daughter cannot be fulfilled while claiming an inability to pay PHEAA). *See also, In re Smith,* Bankr. No. 87–01597, Adversary No. 87–0399, Mem. Op. and Order of June 7, 1988, 1988 WL 59209 (W.D. Pa.) (Debtor was repaying loan from father and paying estranged wife's expenses and debts; hardship discharge of student loan denied). Here Debtor is paying his es-

tranged wife's obligations and expenses and there is no evidence that he is under any legal compulsion to do so. He cannot discharge his debts in order to assume another's.

Chapter 7 was "designed to give the truly needy a fresh start, not to give those who can afford to meet their obligations a head start." *In re Grant,* 51 B.R. at 394. This Debtor who has acted in bad faith and is able to meet his obligations cannot use this court as an escape hatch simply because he has primarily business debts, the existence of which preclude a § 707(b) analysis. In enacting the 1984 amendments Congress intended to encourage repayment when feasible. When that intent is coupled with a bad faith filing, there exists cause to dismiss pursuant to § 707(a).

We conclude, in view of all these factors, that this case should be dismissed for cause pursuant to § 707(a). However, because dismissal is a harsh remedy, we will permit Debtor a brief period in which to convert voluntarily to Chapter 11 [8] or 13. If Debtor so elects, the dismissal will not take effect.

An appropriate order will be entered.

---

**8.** We note that the interplay between sections 105(a) and 706(b) authorize conversion to a

Chapter 11 by the court.