**In re S. Robert DAVIDOFF and S. Robert Davidoff, P.C., a Florida corporation, Debtors.**

**Bankruptcy Nos. 94–10815–BKC–AJC, 94–10816–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

July 19, 1995.

David James Smith, Kaufman, Miller, Dickstein & Grunspan, P.A., Miami, FL, for First Union.

Usher Bryn, Aventura, FL, for debtors.

Barbara Cusumano, Arthur Andersen LLP, Miami, FL.

### ORDER GRANTING FIRST UNION's MOTION TO DISMISS

A. JAY CRISTOL, Chief Judge.

**THIS MATTER** came before the Court on December 15, 1994 for an evidentiary hearing on Creditor First Union's Motion to Dismiss Petition as Bad Faith Filing, and the Court being fully advised in the premises determines as follows.

### BACKGROUND

Debtor, Dr. S. Robert Davidoff, (hereinafter "Debtor" or "Dr. Davidoff") is a fifty year old dentist (prosthodontist) who has been in private practice since 1969. After divorce proceedings commenced in 1989, Dr. Davidoff sold his New York dental practice and moved to Florida in 1990. In the years immediately prior to his moving from New York, Dr. Davidoff's private practice generat-

ed approximate gross income as follows: $600,000.00 in 1987; $550,000.00 in 1988; $500,000.00 in 1989. In 1990, Dr. Davidoff established residency in Florida and began to establish a practice in the North Miami area with $50,000.00 of his own funds and a $100,000.00 loan from First Union. Dr. Davidoff split his time between his New York and Florida practices. His Florida practice generated gross income in the approximate amounts of $300,000.00 in 1991; $300,000.00 in 1992; and $344,000.00 in 1993. Dr. Davidoff testified that, notwithstanding the substantial gross income, his new Florida dental practice was not a success. Dr. Davidoff testified that he implemented a costly marketing and advertising campaign to assure the success of his new practice resulting in only a small profit. Dr. Davidoff testified that he used credit card purchases and cash advances on thirteen separate credit cards and two lines of credit to sustain his dental practice and to pay personal living expenses.

At the time of his bankruptcy filings in March 1994, Dr. Davidoff owed approximately $77,000.00 in unsecured debt (of which approximately $68,000.00 is credit card related debt). In mid–1993 Debtor also defaulted on his loan from First Union which had a balance of approximately 72,000.00 in principal. First Union agreed to accept interest only payments for a period of time, although Dr. Davidoff ultimately defaulted again in November of 1993.

Debtor testified that in the latter part of 1993 he decided to wind-down his private practice and began to look for a salaried position. In January Dr. Davidoff accepted a full-time salaried teaching position with Impla–Med, Inc. giving dental seminars. His starting salary was $75,000 per year at the time of the filing of the petition.[1] Debtor testified that he continued in private practice one day a week to wind-down his practice and complete the treatment of existing patients. Dr. Davidoff's gross income from his one-day a week practice over an 8½ month

period (March 3, 1994 through November 16, 1994) was approximately $85,000.00. ("Schedule B" of 12/9/94 Martin Davidoff Affidavit). Dr. Davidoff also receives approximately $25,000.00 per year in rent from his New York office condominium, although since Debtor filed the petitions, he has forwarded all rental income to the Chapter 7 Trustee.

Dr. Davidoff remarried in 1992, and he and his second wife purchased a $200,000.00 townhouse in the North Miami area. His wife[2] is an attorney who at the time of filing earned a gross annual salary of $40,000.00 as a second year associate with a private law firm. Additionally, she receives $15,000.00 per year in child support for her eight year old son. Dr. Davidoff has two adult children from his prior marriage. They do not live with Dr. Davidoff.

On March 3, 1994, Debtors, S. Robert Davidoff and S. Robert Davidoff P.C., filed Chapter 7 petitions approximately one hour prior to a scheduled show cause hearing in Circuit Court, wherein Debtors were directed to show cause why First Union should not be entitled to replevin Debtors dental equipment and accounts receivable.

Debtor's Statement of Financial Affairs shows that in the year preceeding bankruptcy, Debtor gave gifts of a laptop computer and a video camera to his wife, value $2,000.00.

On Schedule J, current expenditures of an individual debtor, Dr. Davidoff listed $7,643.00 in individual monthly living expenses. The sums include the following:

(1) Home mortgage payment of $1,663.00.[3] Dr. Davidoff's wife is co-debtor on this mortgage, although Dr. Davidoff appears to claim the entire expense of the mortgage himself.

(2) Food: $1,200.00 per month. Debtor claims in his deposition to have misunderstood the category and included after school day care costs for his wife's minor child in

---

1. Debtor's current salary with Impla–Med is $80,000.00.

2. Mrs. Davidoff is not a co-debtor in these proceedings.

3. In his deposition, Debtor stated that the figure in his schedules was incorrect in that the mortgage payment was $2,351.00 plus the homeowners association fee of $315.00 per month. Debtor did not amend his schedules.

## 634

the amount of approximately $200 per week, or $800.00 per month.[4]

(3) Support for adult children: $2,000.00 per month. Debtor is obligated to pay through 1995 or 1996[5] the sum of $1,000.00 a month to his 22 year old daughter under terms of his divorce settlement. The additional $1,000.00 a month support to his adult children is purely voluntary.

(4) Transportation (not including car payments): $185.00 per month. Debtor admits this amount is primarily gas for his wife's Lexus.

(5) Recreation: $600.00 per month.

(6) Clothing: $500.00 per month. Debtor stated in his deposition that this amount is for his wife's clothing.

Dr. Davidoff seeks to reaffirm the $508.00 per month lease on his 1991 Mazda RX–7 and the approximately $200.00 per month lease on his adult daughter's 1993 Ford probe. Although Dr. Davidoff claims to be winding down his practice,[6] Dr. Davidoff seeks to reaffirm all of the debt which would allow him to remain in practice; specifically, the lease on his X-ray system, the lease on his implant system, and the leases on his dental equipment and computer. Since the filing of the petitions, Dr. Davidoff has remained in private practice at the Boca Raton office.

### APPLICABLE LAW AND DISCUSSION

▮ 11 U.S.C. § 707(a) provides that the court may dismiss a case in a Chapter 7 bankruptcy after notice and hearing and only for "cause." The examples of cause set forth in § 707(a) are merely illustrative and are not an exhaustive listing. Absence of good faith is generally held to be sufficient cause for dismissal under § 707(a). *In re Hammonds,* 139 B.R. 535, 542 (Bankr.D.Colo. 1992); *In re Hammonds,* 139 B.R. 535 (Bankr.D.Colo.1992); *In re Zick,* 931 F.2d 1124 (6th Cir.1991); *In re Campbell,* 124

B.R. 462 (Bankr.W.D.Pa.1991); *In re Maide,* 103 B.R. 696 (Bankr.W.D.Pa.1989); *In re Cappuccetti,* 172 B.R. 37 (E.D.Ark.1994). A determination of good faith requires an inquiry into any possible abuses of the provisions, purposes or spirit of the bankruptcy law and whether the debtor genuinely needs the liberal protections afforded by the Bankruptcy Code. *In re Campbell, supra, citing In re Setzer,* 47 B.R. 340, 345 (Bankr.E.D.N.Y. 1985).

In *In re Cappuccetti,* 172 B.R. 37 (E.D.Ark.1994) the court set forth the numerous factors courts utilize to determine whether a Chapter 7 case was filed in bad faith, including: (1) the debtor filed the case in response to a judgment, pending litigation, or collection action; (2) there is an intent to avoid a large, single debt; (3) the debtor has sufficient resources to pay his debts; (4) the debtor is paying debts of insiders; (5) the schedules inflate expenses to disguise financial well-being; (6) the debtor transferred assets; (7) the debtor failed to make candid and full disclosure; (8) the debtor's debts are modest in relation to his assets and income; (9) there are multiple bankruptcy filings or other procedural "gymnastics;" (10) the debtor made no life-style adjustments or continued living an expansive or lavish lifestyle; (11) the unfairness of the use of Chapter 7.

In *Cappuccetti,* the IRS was the debtors' major creditor, and the only debt sought to be discharged was the tax liability owed to the IRS. The court determined that debtors' petition was not filed in good faith in that: the Chapter 7 petition appeared to be filed in response to collection activities by the IRS, the debtors enjoyed a fairly luxurious lifestyle and had made no attempt in the months prior to the filing to reduce their expenses, debtors transferred a valuable piece of real estate to their daughter and paid her car loan every month. The court also believed that debtors had the ability to pay their

---

**4.** *See* deposition at p. 53. Dr. Davidoff has not amended his schedules to reflect this claimed error.

**5.** Debtor testified he was unsure of the exact year. A copy of the divorce settlement was not offered into evidence.

**6.** *See* also Paragraph 4 of Martin Davidoff's Affidavit and attached schedules.

debts. "Indeed, the debtors have paid or reaffirmed their debts with the sole exception of the IRS." The Court also noted that debtors had additional resources excluded from the calculation of their assets and income from a corporation in which Mr. Cappuccetti was the sole owner and employee.

■ Similarly, the facts of the instant case establish ample cause to dismiss.

(1) The debtor filed a petition in response to a collection action: Debtors, S. Robert Davidoff and S. Robert Davidoff, P.C. filed petitions one hour prior to a scheduled show cause hearing in Circuit Court, wherein Debtors were directed to show cause why First Union should not be entitled to replevin Debtors' dental equipment and accounts receivable.

(2) Debtors have sufficient resources to pay debts and

(3) Debtors debts are modest in relation to assets and income: Dr. Davidoff earns a gross annual salary of $80,000.00 [7] as a lecturer and also grossed approximately $85,000 from his one-day a week practice over an 8½ month period (March 3, 1994 through November 16, 1994). The Court can only wonder what Dr. Davidoff would earn if he worked two days a week. Debtor is not unfortunate financially and there have been no allegations of ill health, calamity or other hardship. Not only does Debtor have sufficient resources to pay debts, but Debtor's debts are modest in relation to assets and income.[8]

(4) Debtors are paying debts of "insiders": Dr. Davidoff is paying the $200.00 per month lease on his adult daughter's car as well as giving over $1,000.00 per month in support to his adult children who do not live with him, and paying substantial sums for his wife who is not a debtor and who has independent income of almost three times the national average for a family, while spending nothing on his substantial debt to First Union and other creditors.

■ (5) Debtors' schedules inflate expenses to disguise financial well-being: Debtors' schedules list not merely Debtors' *individual* expenses, but combined expenses of his non-debtor spouse and her son who is not Debtor's dependent, and for whom Debtor's spouse receives $15,000.00 per year in support. In Debtors' Response to First Union's Motion to Dismiss, Debtors state that "the mere fact that the debtor takes care of his children does not warrant undue concern or criticism ... [that] debtor's expenditures reflect nothing more than the care and concern he has for his family." The Court commends Debtor for the care and concern he has for his family. The Court further recognizes the gross unfairness and detriment that creditors would experience if bankruptcy allowed a debtor's personal obligations to be eradicated while a debtor continued to pay another's debts and freely spend. Debtor may not discharge personal liability to creditors so that the funds will be of use to another.[9]

■ (6) Debtor has made no lifestyle adjustments and has continued living an expansive lifestyle: A debtor need not live an impoverished lifestyle in order to be afforded the protections of the Bankruptcy Code. However, Debtor admits that in the wake of ever increasing debt, he has not adjusted his lifestyle and continues to a) spend approximately $600.00 per month in entertainment; b) give over $1000.00 per month to his adult children; c) pay for the lease on his adult daughter's car, etc.

(7) Debtor failed to make candid and full disclosure: The Court does not find credible Dr. Davidoff's explanation for scaling back his practice to one day per week prior to his filing bankruptcy. Dr. Davidoff states that he continues in private practice one day a week merely to wind-down his practice and complete the treatment of existing patients.[10]

---

7. Debtor's salary was $75,000.00 at the date of filing.

8. Debtor has approximately $78,000.00 in unsecured debt and $72,000.00 in principal due under the First Union loan. Dr. Davidoff also owns a townhouse for which he and his wife paid $200,000.00, and which is exempt as homestead under the Code.

9. *In re Maide,* 103 B.R. 696 (Bankr.W.D.Pa. 1989).

10. Deposition of S. Robert Davidoff, pp. 28–29.

Yet Dr. Davidoff seeks to reaffirm all of the debt which would allow him to remain in practice (the leases on his X-ray system, the lease on his implant system, and the leases on his dental equipment and computer). The totality of the circumstances, including the timing of the filing, the reaffirmation of all debt which would enable Dr. Davidoff to continue in practice, and the post-petition advertising of the supposedly abandoned practice, suggests that Debtors have purposefully reduced their income for the bankruptcy with the intention or, if not the intent, the option of resuming full-scale private practice after discharge.

(8) The unfairness of the use of Chapter 7: The Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. "The bankruptcy laws are grounded on the fresh start concept. There is no right, however, to a head start." *In re Jones,* 114 B.R. 917 (Bankr.N.D.Ohio 1990). Bankruptcy protection was not intended to assist those who are attempting to preserve a comfortable standard of living at the expense of their creditors. Even if a debtor is in technical compliance with the Bankruptcy Code, if he is attempting to over-utilize the protections afforded by the bankruptcy process to the unconscionable detriment of creditors, the case may be dismissed for cause. *In re Hammonds,* 139 B.R. 535 (D.Col.1992).

Is a fresh start what this case is all about? I think not. The average annual income in the United States for a family is about $17,-000.00. Here we have a husband with a salary on date of petition of $75,000.00 plus potential for additional earnings from a dental practice and a wife with a salary of $40,-000.00 per year plus $15,000.00 in annual child support. $130,000.00 in one year is not exactly below the poverty level. During the hearings on this Motion the Court made counsel for the parties aware of the research and lectures of professor Tahira K. Hira, Ph.D. of Iowa State University at Ames, Iowa. The Court obtained Professor Hira's published material [11] and provided it to counsel. Dr. Hira, has been quoted as saying, "It is harder to get a drivers license than to file bankruptcy." Dr. Hira's research raises the following question: Did Congress intend the bankruptcy law to provide a method whereby yuppies and other affluent persons may serenely and luxuriously cruise down the river of life without modification or disturbance of their far above average affluent life style and, with barely a ripple, wash themselves clean of debt by the filing of a bankruptcy petition? The Debtor in this case does not appear to be suffering. The Debtor is merely annoyed that the bank and his other creditors have an expectation of being repaid for credit extended. If the Debtor is suffering at all in this case, it is from a self-inflicted wound. There was no tragedy, no huge financial misfortune. Following his divorce, the Debtor came to Florida leaving a dental practice that grossed over half a million dollars a year and became impatient that his Florida dental practice income was only in the $300,000.00 range. There is no evidence that Debtor has done other than live "high on the hog." There is no evidence that he made any effort to put his shoulder to the wheel. It appears the only wheel that interests him is the wheel of fortune. Bankruptcy is a different game. It is the opinion of this Court that Congress did not design the bankruptcy system to ameliorate the "annoyance" of this Debtor.

While some ability to repay debts is certainly not, in and of itself, adequate cause for dismissal of a Chapter 7 case,[12] when considered in conjunction with the multiple above-listed factors the Court determines that Debtors lack the requisite good faith. Accordingly, it is

**ORDERED:** that creditor First Union's Motion to Dismiss Petition for cause pursuant to 11 U.S.C. § 707(a) is GRANTED.

**DONE and ORDERED.**

---

11. Tahira K. Hira, Ph.D., *Causes and Effects of Consumer Bankruptcies: A Cross–Cultural Comparison,* Journal of Consumer Studies and Home Economics, 229–243 (1992).

12. Except perhaps under § 707(b).