**In re John and Laura SIEMEN, Debtors.**

**No. 02–62606–R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

June 19, 2003.

Gary R. Sanfield, Clinton Twp., MI, for Debtors.

Stephen E. Spence, Detroit, MI, U.S. Trustee.

*Opinion Regarding Motion to Dismiss*
STEVEN W. RHODES, Chief Judge.

The matter before the Court is the U.S. trustee's motion to dismiss the case pursuant to 11 U.S.C. § 707(b) for substantial abuse. The Court held an evidentiary hearing on May 1, 2003. Finding that the debtors' filing is a substantial abuse and that the debtors have demonstrated a lack of honesty in the bankruptcy process, the Court concludes that dismissal is warranted.

I.

John and Laura Siemen filed this chapter 7 bankruptcy petition on September 27, 2002. The original schedule I indicated that John Siemen is a teacher with a monthly net income of $2,773.98. Laura Siemen is listed as a homemaker with no income. No dependents were listed. The original schedule J showed expenses of $2,844 per month.

On October 29, 2002, the case trustee conducted the meeting of creditors. At the meeting, several issues were raised regarding the debtors' schedules. For that reason, the meeting was adjourned until November 26, 2002.

At the adjourned meeting, more questions were raised and the meeting was adjourned for a second time to December 18, 2002.

On November 27, 2002, the debtors filed a statement of purpose to amend schedules. The debtors amended schedules A and C, and the summary of schedules, to reflect a $10,000 interest in a co-op condominium which they had inadvertently neglected to previously include. The debtors also amended schedules I and J. Amended schedule I showed net monthly income of $3,620. Amended schedule J showed expenses of $3,814.

The meeting of creditors was concluded on December 18, 2002.

On December 26, 2002, the U.S. trustee filed this motion to dismiss the case pursuant to § 707(b). The U.S. trustee noted that several of the amended expenses listed by the debtors appear to be excessive,

grossly inflated, or simply not necessary, specifically:

| | |
|---|---|
| Cable TV & internet | $105.00 |
| Home Maintenance | $240.00 |
| Food (for two) | $954.00 |
| Clothing | $370.00 |
| Medical and dental | $180.00 |
| Transportation | $350.00 |
| Recreation | $220.00 |
| Charitable contributions | $100.00 |
| Auto insurance | $255.00 |

(U.S. trustee's motion to dismiss at 2.)

The debtors filed an answer to the motion to dismiss on January 21, 2003. Along with the answer, the debtors filed second amended schedules I and J. The answer asserts that the second amended "schedule I identifies dependents of the Debtors to reflect a household consisting of the Debtors' daughter, a son, a grand-daughter and a grand-son[.]" The debtors assert that "the amended expenses listed by the Debtors are not excessive and not grossly inflated but rather reflect those expenses the Debtors actually incur on a monthly basis so as to maintain their household [sic]."

The Court held an evidentiary hearing on May 1, 2003. John and Laura Siemen both testified regarding their dependents and expenses.

## II.

The U.S. trustee has moved to dismiss the debtors' chapter 7 case for "substantial abuse" under 11 U.S.C. § 707(b), which provides:

(b) After notice and a hearing, the court, on its own motion or on the motion of the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707.

 The Sixth Circuit Court of Appeals has articulated the test for determining whether a case should be dismissed pursuant to § 707(b):

Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor. See [In re] Walton, 866 F.2d [981] at 983 [(8th Cir.1989)]. In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. See 4 Collier, supra, ¶ 707.07, at 707–20. Substantial abuse can be predicated upon either lack of honesty or want of need.

It is not possible, of course, to list all the factors that may be relevant to ascertaining a debtor's honesty. Counted among them, however, would surely be the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in "eve of bankruptcy purchases," and whether he was forced into Chapter 7 by unforeseen or catastrophic events.

Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. Walton, 866 F.2d at 984–85; [In re] Kelly, 841 F.2d [908] at 914–15 [(9th Cir.1988)] (collecting cases). That

factor alone may be sufficient to warrant dismissal.

*In re Krohn,* 886 F.2d 123, 126 (6th Cir. 1989).

Accordingly, the Court must examine the totality of the circumstance and determine whether the debtors are honest and whether they are in need of chapter 7 bankruptcy.

### III.

■ The Sixth Circuit has instructed that the manner in which a bankruptcy court is to determine whether a debtor is in need of chapter 7 relief is to determine whether the debtor has the "ability to repay his debts out of future earnings." *Krohn,* 886 F.2d at 126.

In the present case, a review of the debtors' schedules shows that the debtors do have an ability to repay a portion of their debts out of future earnings. Although the second amended schedules I and J show a monthly surplus of only $13, the Court finds that the expenses are grossly inflated. With some belt tightening, the debtors could readily have a surplus in the range of $500–800 per month. Paying $500 per month in a 36 month plan would provide approximately a 20% dividend to unsecured creditors. Paying $800 per month in a 60 month plan would provide approximately a 50% dividend.

Initially, the Court notes that the debtors are currently supporting four non-dependent family members—their 20 year old son, their 31 year old daughter and their daughter's two children, ages 7 and 5. While the debtors' desire to continue to support their adult children and their grandchildren might be commendable, it cannot be justified within the bankruptcy context. It forces the debtors' creditors to support the debtors' adult children and their grandchildren. *See In re Staub,* 256 B.R. 567, 570 (Bankr.M.D.Pa.2000) (ex-penses for adult children "should not be foisted upon a debtor's pre-petition creditors."); *In re Davidoff,* 185 B.R. 631, 635 (Bankr.S.D.Fla.1995)("The Court commends Debtor for the care and concern he has for his family. The Court further recognizes the gross unfairness and detriment that creditors would experience if bankruptcy allowed a debtor's personal obligations to be eradicated while a debtor continued to pay another's debts and freely spend. Debtor may not discharge personal liability to creditors so that the funds will be of use to another.") (*citing In re Maide,* 103 B.R. 696 (Bankr.W.D.Pa. 1989)); *In re Richmond,* 144 B.R. 539, 542 (Bankr.W.D.Okla.1992) ("debtors' unsecured creditors should [not] be required to contribute to the voluntary support of family members [ (i.e., grandchildren) ] who are not dependents of debtors").

Moreover, it is not clear that the adult children need their parents' support. The 31 year old daughter is receiving approximately $1,000 per month in child support plus whatever wages she earns, and the 20 year old son is also working, although the debtors did not know how much money he is making. It appears that both of these children could be contributing to the household expenses or even supporting themselves.

Significantly, the debtors testified that their household expenses "would only go down slightly" if the children and grandchildren did not reside with them. The Court finds that this testimony is simply incredible. Indeed, in the debtors' answer to the motion to dismiss, the debtors specifically state that the household consists of themselves, their children and their grandchildren and that the expenses listed are for the entire household.

Additionally, the Court finds that the expenses stated in the second amended

schedule J are inflated (based on a household of six) or grossly inflated (based on a household of two). The following expenses can be reduced without causing the debtors undue hardship:

| | |
|---|---|
| Cable TV & Internet | $105.00 |
| Home Maintenance | $240.00 |
| Food | $954.00 |
| Clothing | $370.00 |
| Transportation | $350.00 |
| Recreation | $220.00 |

All of these expenses were listed in lower amounts in the original schedule J. Comparing the originally budgeted amounts for these items to the second amended figures indicates a difference of $954 a month.

Accordingly, the Court holds that the debtors could pay a meaningful dividend to their creditors. The debtors are not truly in need of chapter 7 bankruptcy relief. Therefore, the Court will grant the trustee's motion to dismiss pursuant to § 707(b).

### IV.

The Court also determines that this case should be dismissed under the "honesty test" articulated by the Sixth Circuit.

The honesty analysis under § 707(b) looks to a debtor's relationship with creditors and whether it has been marked by essentially honorable and undeceptive dealings or whether the debtor merely seeks an advantage over creditors. *Krohn*, 886 F.2d at 126. From *Krohn*, bankruptcy courts in this circuit can glean several non-exclusive factors relevant to an assessment of a debtor's honesty. Such factors that are relevant to this matter include: (1) a consistent pattern of living on credit or beyond one's means; (2) whether the debtor was forced into bankruptcy by unforeseen or catastrophic events; and (3) the debtor's good faith and candor in filing schedules and other documents. *See id.* at 126–28.

*In re Blum*, 255 B.R. 9, 11 (Bankr. S.D.Ohio 2000).

Analysis of the debtors' case under the three prongs articulated in *Krohn* shows that the debtors lack the honesty required for a chapter 7 discharge. First, the debtors' schedules show $94,550 in unsecured debts. The vast majority of these debts are credit card debts, showing a consistent pattern of living beyond their means. Second, nothing in the petition or schedules indicates that the debtors were forced into bankruptcy by an unforeseen or catastrophic event. Finally, the debtors did not demonstrate good faith and candor in filing their petition and schedules. The schedules required two amendments to disclose all of their income and interests in property. As additional income was revealed at the meeting of creditors, the debtors would then allege additional expenses to avoid showing a surplus which could be used to repay creditors. The Court has examined the debtors' current schedule J and finds that the expenses listed are grossly inflated.

Finally, the debtors' demeanor during the evidentiary hearing did not reassure the Court that the debtors had been completely honest in preparing and amending their schedules. During the evidentiary hearing, Mr. Siemen asserted that they did not have extravagant expenses, such as big vacations. However, the debtors' second amended schedules lists a yearly recreation expense of $2,640, yearly clothing expense of $4,200 and yearly cable and internet expense of $1,260. The Court finds these expenses are extravagant. During the hearing, Mr. Siemen was asked, "if you were shown a way that you could pay something back to your creditors in a chapter 13 bankruptcy, would you be interested in doing that?" Mr. Siemen responded less than enthusiastically that he "would probably go for it."

Due to the numerous errors and inflated expenses, and the debtors' lack of honesty, the Court finds that the case should be dismissed pursuant to § 707(b).

### Conclusion

The Court does not intend to imply that every family earning over $60,000 is precluded from filing a chapter 7 bankruptcy. There may be cases where a family with that level of income can show a genuine need for relief. However, this is not such a case. With a little belt tightening, the debtors have sufficient disposable income to pay a meaningful dividend to their creditors. Accordingly, the trustee's motion to dismiss pursuant to § 707(b) will be granted. However, since Mr. Siemen stated that he would probably be interested in repaying his creditors through a chapter 13 bankruptcy, the Court will delay entry of the order for 10 days to give the debtors an opportunity to convert the case to chapter 13.