**In re Peter L. HAFFNER, Debtor.**

**Bankruptcy No. 95–13005.**

United States Bankruptcy Court,
D. Rhode Island.

July 22, 1996.

James F. Hyman, Newport, Rhode Island, for debtor.

Sheryl Serreze, Office of U.S. Trustee, Providence, Rhode Island.

## DECISION AND ORDER GRANTING UNITED STATES TRUSTEE'S § 707(b) MOTION TO DISMISS

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the United States Trustee's Motion to Dismiss the above captioned Chapter 7 case, pursuant to 11 U.S.C. § 707(b), which provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this Chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Based upon the entire record, including the following discussion, as well as our understanding of what Congress intended by its enactment of this section, the Motion to Dismiss is GRANTED.

### BACKGROUND

On November 29, 1995, Peter Haffner filed a voluntary Chapter 7 petition listing $25,443 in unsecured, non-priority creditors, almost all of which is consumer debt. The Debtor's schedules of income and expenses, I and J respectively, as filed disclosed net monthly income of $2,503,[1] and expenses of $1,500. Since the filing, Mr. Haffner has reaffirmed debts in the total amount of $21,460, with the

---

1. This was based on a gross annual income of $40,000. At the hearing, however, the Debtor testified that his annual salary is now $44,000.

following creditors:[2] (1) Kay Jewelers $2,428; (2) Sears $1,500; (3) American Express $2,000; (4) Norwest Financial $1,170; (5) Filenes $1,027; (6) Jordan Marsh $304; (7) Lechmere $1,352; and (8) GMAC $11,680 (secured).

On January 29, 1996, the Debtor amended Schedule J, *increasing* his monthly expenses to $2,824, explaining that the original schedule did not include obligations incurred as a result of his getting married just prior to the bankruptcy filing. The Debtor testified that shortly before the wedding he delivered the completed petition and schedules to his attorney, with the intention of updating the figures after the wedding trip. He testified, however, that "he ran out of time," and the petition was filed in its original form, uncorrected. Mr. Haffner adds that he has taken on the responsibility of supporting his wife's two sons, one of whom has "special needs."

On February 12, 1996, unaware of the amended schedules,[3] the U.S. Trustee moved for dismissal of this Chapter 7 case, pursuant to 11 U.S.C. § 707(b). After reviewing the Debtor's amended schedules, and notwithstanding the changes, the U.S. Trustee presses the motion for dismissal, on the ground that the expense figures are inflated and include many obligations that are the responsibility of Mr. Haffner's non-debtor spouse.[4] There is no evidence that the Debtor has adopted his wife's children.

## DISCUSSION

■ Section 707(b) was added to the Code as a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. The interpretation and application of this section has generated considerable disagreement and litigation elsewhere, but we have not been called upon to formally consider the issue until now.[5]

In the First Circuit we find two bankruptcy court decisions, and they are in disagreement—*In re Keniston,* 85 B.R. 202 (Bankr. D.N.H.1988), and *In re Snow,* 185 B.R. 397 (Bankr.D.Mass.1995). Judge Yakos, in *Keniston,* viewed § 707(b) as merely re-codifying prior bad faith Code references, i.e.

the dismissal power under § 707(b) is not essentially different from the established power of a bankruptcy court to dismiss a petition under any chapter of the Bankruptcy Code that is filed with a lack of good faith or as an abuse of the process under §§ 105(a) and 707(a) of the Code.

*Keniston,* at 223, and he also expressed constitutional concerns, under the Equal Protection Clause, when "substantial abuse" is linked with the debtor's ability to pay creditors. *Id.* at 213.

In *Snow,* Judge Hillman did not follow *Keniston,* but held instead that "the debtor's ability to make substantial payments on unsecured indebtedness sought to be discharged in the Chapter 7 case is to be considered by the court in making its findings under 707(b)." 185 B.R. at 401. In applying the totality of circumstances test, and being fact specific, Judge Hillman followed the Sixth Circuit case *In re Krohn,* 886 F.2d 123 (6th Cir.1989), where the Court held:

Substantial Abuse can be predicated upon either lack of honesty or want of need.

.     .     .     .     .

Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of ·future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income per-

---

2. Many of these debts were incurred within 90 days of bankruptcy, including ·the Debtor's wedding and wedding trip expenses, gifts, and golf clubs.

3. The Debtor neglected to serve the U.S. Trustee with a copy of his amended Schedule J.

4. The Debtor's wife earns $38,000 per year.

5. The closest we have previously come to addressing this issue was while sitting by designa-

tion in the District of Colorado, in the context of a creditor's motion to dismiss for "cause" under § 707(a). In denying the creditor's request for relief, we concluded that cause under § 707(a) did not include the debtor's ability to repay his or her debts, because that ground for dismissal was contained in § 707(b). *First Trust Co. v. Frisch (In re Frisch),* 76 B.R. 801, 803 (Bankr.D.Colo. 1987).

mits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

886 F.2d at 126; *see also Snow*, 185 B.R. at 401; *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir.1991) (citing additional factors).

█ Being fact specific also, in this case we will use the totality of circumstances test in analyzing the motion to dismiss under § 707(b). Applying that standard to the present facts, we find that Mr. Haffner's ability to liquidate his consumer debts, with relative ease, is a major factor in this case and is, alone, sufficient to warrant dismissal. *See Krohn*, 886 F.2d at 126.

█ We also agree with the assignment of the burden of proof as set forth in *Snow*. Section 707(b) states that "[t]here is a presumption in favor of granting the relief requested by the debtor." The movant has met the initial burden, and the presumption shifts "if the schedules indicate a debtor's ability to make *very substantial* payments on unsecured indebtedness." 185 B.R. at 403. When this happens, the burden is with the debtor to produce evidence of entitlement to the relief sought. *Id.*

In this case, as in most instances where the debtor is confronted with a 707(b) motion to dismiss, the Court was promptly supplied with an allegedly *more accurate*, or *more carefully crafted* version of the debtor's expenses. We will borrow Judge Hillman's generous and temperate comment[6] that we must regard the amended schedule "as Debtor's most determined effort to reduce the amount of excess income." *Snow*, 185 B.R. at 399. By amending Schedule J, Mr. Haffner seeks to increase his expenses by $1,384, thereby reducing his income to a negative $321 per month. After hearing, we find that in addition to inflating his own expenses, the Debtor now includes expenses that are either the responsibility of his non-debtor wife or are joint obligations at best, and are excessive, as well.

The U.S. Trustee also urges that we apply *In re Strong*, 84 B.R. 541 (Bankr.N.D.Ind. 1988), to include the non-debtor spouse's income of $38,000 per year in the analysis. In this case, we are not required to, and therefore decline to rule on that request. Instead, in these calculations we will consider only the Debtor's income, and adjust only his figures to resolve this dispute. To begin with, in his amended schedules the Debtor has added a $284 per month expense for a Volvo automobile owned and used by his wife. This item is rejected, as is Mrs. Haffner's auto insurance expense of $120 per month. The home maintenance item of $40 per month is deleted because: (1) the Debtor does not own a home; and (2) this item is otherwise unsupported. The Debtor lists $180 per month for telephone, but conceded on cross-examination that his wife's son incurred many of the telephone charges, using 900 numbers. He also believes that this activity has been stopped or curtailed. At best this is a joint expense, and based on the Debtor's testimony that he is attempting to reduce the item, we find that his fair share of the telephone expense is $40 per month. Expenses for food, rent, utilities and heat, totaling $1,350, should be born equally by the Debtor and his non-debtor spouse. We make this ruling in light of Mrs. Haffner's annual income of $38,000, and the fact that her two dependent children live with the Debtor. This allocation is more than generous to the Debtor. With these adjustments for reasonableness ($1,259), the Debtor's expenses are reduced to $1,565, leaving monthly excess income of $938.[7] Based on these numbers, the Debtor

---

6. The predictability of debtors scrambling to distance themselves from their original schedules, once challenged on either § 707(b), or on § 524(c) (reaffirmation) grounds, is not a pretty picture, and the transparency of the practice is also disturbing.

7. And this figure does not take into account an additional $4,000 in annual income, which the Debtor disclosed at trial.

is easily able to fund a Chapter 13 plan for $785 per month, which would pay 100% to unsecured creditors in three years. It would be a bonanza to the credit community if all Debtors were as capable of paying their bills as is Mr. Haffner.

The Debtor did submit evidence of a medical ailment and suggests that he is deserving of special consideration, but admitted that his respiratory problem does not cause him to miss much time from work. We find, based on the Debtor's present condition, that his illness is neither unique nor disabling. If his medical condition does become a factor, this Order is subject to modification.

Based on the foregoing discussion we find that the Debtor is eligible for Chapter 13 relief, that he has a stable source of income with which to fund a plan, and that granting this Debtor relief under Chapter 7 would amount to substantial abuse. Accordingly, the United States Trustee's Motion to Dismiss is GRANTED.

Enter Judgment consistent with this opinion.