In re Joan S. LAPATIN, Debtor.

Bankruptcy No. 97–10664.

United States Bankruptcy Court,
D. Rhode Island.

Dec. 11, 1997.

Peter G. Berman, Raskin & Berman, Providence, RI, for Debtor.

Sheryl Serreze, Office of United States Trustee, Providence, RI.

Louis Á. Geremia, Providence, RI, Chapter 7 Trustee.

### DECISION AND § 707(b) ORDER DISMISSING THE CASE

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on November 5, 1997, on the United States Trustee's Motion to Dismiss this Chapter 7 case under 11 U.S.C. § 707(b), which provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

The facts are as follows:

(1) The Debtor schedules monthly net income of $1,544. To arrive at this figure, however, she claims the following deductions: (a) $688, insurance; and (b) $1,422 for "other" alleged expenses which were cryptically labeled "RET, CU, RETLN, UNI12." *See* Schedule I.

(2) At the hearing on the United States Trustee's motion to dismiss, the Debtor testified that she did not know what the $688 insurance deduction was for, and no such item appears on her pay stub, so this item is disallowed, with prejudice. *See* United States Trustee's Ex. 1. The Debtor also explained the cryptic notations for the deductions listed in Schedule I as follows: (a) "RET" is a mandatory *retirement* deduction of $62.43 per week; (b) "CU" is *Credit Un-*

ion and is a voluntary contribution of $20 per week for a Christmas club; (c) "RETLN" is a mandatory *retirement loan* payment of $40 per week; and (d) "UNI12" is a mandatory weekly deduction of $7.50 for *union dues;*

(3) Based on this information the Debtor has net monthly income of $3,095;[1]

(4) As scheduled, the Debtor's monthly expenses are $1,468. *See* Schedule J;

(5) The Debtor testified that she lives in an apartment attached to her mother's home and that she pays a "below market rent," and no utilities. She also stated that she has additional expenses, not listed in schedule J,[2] as follows: (a) child care, $30 per week; (b) religious education, $180 per month; and (c) $4,000 per year tuition for her daughter's elementary education.

(6) Giving the Debtor credit for even the unscheduled expenses, she has net disposable income of $985 per month.[3]

(7) The total unsecured debt in this case is $32,503, all of which appears to be consumer debt. *See* Schedules E & F.

### DISCUSSION

The United States Trustee contends that the Debtor's ability to pay her debts out of future earnings, and her eligibility for Chapter 13 are factors to be considered among the totality of the circumstances in determining whether substantial abuse exists.

■ The Debtor argues that in enacting § 707(b), Congress did not intend to include a *future income test* to determine substantial abuse, and that the Trustee has not overcome the statutory presumption in favor of the debtor. In this case, regardless of the Congressional intent, any such presumption is clearly rebutted, given the Debtor's own figures in Schedules I and J, and the absence of any information as to the necessity or reasonableness of certain claimed expenses.

■ The Debtor also argues that we should not consider the actual expenses of this particular debtor, but rather what a hypothetical individual would pay for rent and related expenses were they not subsidized by a relative. The Debtor's actual expenses are not disputed, and the fact that they are lower than the norm does not alter the level of scrutiny required under Section 707(b). *See In re Lamanna,* 210 B.R. 17 (Bankr.D.R.I.1997).[4]

■ In considering the issue of substantial abuse under § 707(b), this Court relies heavily upon the "totality of circumstances" concept, examining the facts in each case. *See In re Haffner,* 198 B.R. 646 (Bankr. D.R.I.1996); *see also In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989); *In re Snow,* 185 B.R. 397, 401 (Bankr.D.Mass.1995); *In re Mastromarino,* 197 B.R. 171, 176 (Bankr.D.Me. 1996), and we have adopted, for § 707(b) analysis purposes, the following language from *Krohn:*

> Substantial abuse can be predicated upon either lack of honesty or want of need.
>
> . . .
>
> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to

---

1. We arrive at this figure by taking the total income from Schedule I ($1,544), plus the mystery insurance deduction of $688, plus inflated scheduled deductions of $1,422, minus actual deductions, according to the Debtor's own testimony, of $559.

2. We have heard not a word as to why the religious and private school education expenses were not disclosed until the hearing, and have concern that the omission was prompted by the knowledge that they are not allowable. *See In re Granito,* BAP No. RI 97-070, slip op. at 5-6 (Bankr.1st Cir. October 7, 1997)(discussing the different approaches to determine the reasonableness of educational expenses).

3. Net monthly income of $3,095, minus $2,110 (scheduled expenses of $1,468, plus unscheduled expenses of $642.33).

4. Debtor's counsel also made two constitutional arguments which he customarily makes in these cases, for possible appellate purposes. We have consistently ruled that these arguments are without merit.

need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

886 F.2d at 126; *see also Haffner,* 198 B.R. at 648–49; *Snow,* 185 B.R. at 401. Here, without adjusting expense items that we believe are inflated, and allowing the Debtor the benefit of all of her alleged expenses, and notwithstanding that many of her monthly expenses do not appear in Schedule J, the Debtor is able to pay all of her unsecured debts with relative ease, and without sacrifice or hardship. With disposable income of $985 per month, all of the Debtor's creditors would be paid in full in thirty-seven months.

Debtor's counsel emphasizes the legislative history of the 1978 Code that "originally ... Congress explicitly rejected the notion that ability to fund a Chapter 13 Plan is a basis to deny Chapter 7 discharge." (Debtor's Mem. in Support of Obj. to Trustee's Motion to Dismiss, at 1). Viewed in its best light, this argument is disingenuous. Section 707(b), which abrogated prior Congressional sentiment on the subject, was added to the Code in 1984, and it is the current legislative intent that is meaningful here. The legislative comment that is relevant to this discussion is that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." S.Rep. No. 65, 98th Cong. 1st Sess. 43 (1983). That counsel ignores this does little to aid his cause.

Finally, the Debtor argues that she maintains a "bare bones" living style, and worries that her actual expenses may increase in the future, especially with regard to replacing a ten year old automobile. As for this concern, we can only restate our continuing recognition of the fact that financial (and other) circumstances can and do change, and that, as always, this Court would be receptive to a motion to reconsider any order if, during the life of the Chapter 13 plan, payment or other terms should be modified, *in either direction.* *See, e.g.,* 11 U.S.C. §§ 1328(b) and 1329.

Based on the entire record, the Motion to Dismiss is GRANTED, on the condition that the Order of Dismissal will become final in fifteen days unless the Debtor converts her case to Chapter 13, with plan provisions substantially as discussed above.

Enter Judgment consistent with this order.