**In re James MILLER and Antoinette Miller, Debtors.**

**Office of the United States Trustee, Movant,**

v.

**James Miller and Antoinette Miller, Respondents.**

**No. 1–03–02465.**

United States Bankruptcy Court, M.D. Pennsylvania.

Dec. 10, 2003.

Deborah A. Hughes, Harrisburg, PA, for Debtors.

## MEMORANDUM OPINION AND ORDER

MARY D. FRANCE, Bankruptcy Judge.

This matter is before the Court on the Motion of the United States Trustee ("Movant") to dismiss the within case under 11 U.S.C. § 707(b) for substantial abuse of Chapter 7 of the Bankruptcy Code.[1] I have jurisdiction to hear this mat-

---

1. Movant is statutorily vested with the general duty to oversee the integrity of the Bankrupt-

ter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A) and (J).[2] On September 3, 2003, a hearing was held on the Motion at which time both Debtors appeared and testified. The parties were requested to file briefs, and they have done so.[3] The matter is now ready for decision.

### Findings of Fact

Debtor James Miller is a civilian employee at the United States Navy depot in Mechanicsburg, Pennsylvania. In 2002, he earned $67,735.00. Debtors filed their Chapter 7 petition on April 24, 2003. In addition to the petition, Debtors filed schedules of income and expenses containing the following relevant entries:

| | |
|---|---|
| Husband's gross monthly income | $6,078.80 |
| Payroll deductions: | |
| Retirement | $ 425.51 |
| Car insurance | $ 216.67 |
| Husband's monthly net income | $4,042.39 |
| Wife's monthly net income | $ –0– |
| Total net monthly income | $4,042.39 |
| | |
| Monthly expenses: | |
| Second mortgage | $ 395.00 |
| Total monthly expenses | $3,805.00 |

On Schedule J, Debtors listed two sons, ages 28 and 21, as dependents. Although both are adults, no information was provided about whether either one or both of them contributed to the household expenses.[4] Debtors reported unsecured, non-priority debt of $85,658.00, most of which was accumulated more than a year prior to the filing of the petition. The

circumstances under which these Debtors accumulated so much unsecured debt are somewhat unusual. Debtors have been married for thirty-one years. For approximately twenty-three years they lived in a home (which they referred to as the "compound") with several members of Antoinette Miller's extended family, including her mother, an uncle, two sisters and their respective families. The compound was owned by Antoinette's mother. During the time they lived in the compound Debtors were not required to pay housing or utility costs. It was during the time they lived at the compound that Debtors amassed most of the debt they now seek to discharge.

This relatively burden-free existence ended abruptly when Antoinette's sister mortgaged the compound but was unable to service the debt. The property went into foreclosure in 1996, and the individual families were forced to find their own housing. Struggling to qualify for a loan, Debtors ultimately obtained a mortgage through a broker on the secondary market at ten percent interest and bought a house for $123,777.00. Unable to support themselves, two adult sons and one grandchild on a single income while servicing their credit card debt, they were forced to seek relief from their creditors.

Under these circumstances, few can reasonably dispute that some form of relief is

---

cy system, and the specific duty to file motions under 11 U.S.C. § 707(b). *See also,* 28 U.S.C. § 586.

2. This *Memorandum Opinion and Order* constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

3. While the Motion referred to both subsections (a) and (b) of Section 707, Movant's brief limited itself to Section 707(b). There-

fore, I will treat the matter under Section 707(a) as having been withdrawn.

4. Mr. Miller testified that both of his adult sons resided with him and his wife. At the time of the hearing, one of these men was employed and the other was collecting unemployment compensation. Although the expenses listed on Schedule "J" did not include items related to Debtors' children or grandchild, Mr. Miller testified that Debtors made incidental expenditures for their support.

needed. Movant, however, contends that total discharge of unsecured debt through Chapter 7 is not merited, and, in fact, would constitute substantial abuse. That contention creates the issue now before me.

### Discussion

#### A. Substantial Abuse under 707(b)

The relevant section of the Bankruptcy Code provides as follows:

> [T]he court ... may dismiss a [Chapter 7] case ... if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

■ The Bankruptcy Code does not define the term "substantial abuse." Therefore its meaning is to be determined by the courts. Whether such abuse exists in a case is largely left to the court's discretion. *In re Bacco*, 160 B.R. 283, 288 (Bankr.W.D.Pa.1993). The parameters of this discretion lie somewhere between the statutory presumption that a Chapter 7 debtor's petition for relief should be granted (*see In re Green*, 934 F.2d 568, 572 (4th Cir.1991)) and the policy that "it was not the design of the bankruptcy laws to allow the debtor to lead the life of Riley while his creditors suffer on his behalf." *In re Bryant*, 47 B.R. 21 (Bankr.W.D.N.C. 1984).[5]

Despite the vast expanse between these competing principles, neither the Supreme Court nor the Third Circuit Court of Appeals has addressed the concept of "substantial abuse." Bankruptcy courts in this circuit have looked for guidance to the opinions of other courts of appeals, which have developed a variety of formulations for analyzing whether the filing of a debtor's petition is abusive.

The first court of appeals to provide a framework for analyzing substantial abuse, the Ninth Circuit Court of Appeals, has held that a debtor's ability to pay his debts will, standing alone, justify dismissal under Section 707(b). *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988). *Kelly* relied on language in the legislative history of a bill introduced into the Senate in 1983, which ultimately lead to the passage of the Bankruptcy Act of 1984.[6] "The committee report on the final version of S. 445 states clearly that dismissal for substantial abuse is intended to 'uphold[ ] creditors' interests in obtaining repayment where such repayment would not be a burden,' and that 'if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse.'" *Kelly*, 841 F.2d at 914, citing, S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983)(*accord, In re Walton*, 866 F.2d 981 (8th Cir.1989))(debtor's ability to repay two-thirds of his debt over three years was sufficient to justify the bankruptcy court's

---

5. Section 707(b) was added to the Bankruptcy Code in response to concerns of the credit community that debtors were abusing Chapter 7. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L.No. 98–353, 98 Stat. 333 (1984). *Green*, 934 F.2d at 570. "Section 707(b) has always been intended, at least in part, to balance the interests of a debtor who cannot pay his debts as they come due against a creditor's interest in obtaining repayment of at least a portion of the debts if such repayment would not be a burden."

Ann Morales Olazabal, *Consumer Bankruptcy Reform and 11 U.S.C. § 707(b): A Case-based Analysis*, 12 B.U. Pub. Int. L.J. 317, 326–27 (2003).

6. Since no committee reports were prepared on the 1984 Act, the report on Senate Bill 445 provides the best guidance on Congress' intent when it enacted § 707(b). *Kelly*, 841 F.2d at 914, fn. 7.

finding of "substantial abuse.") [7]

Other circuits, however, have embraced a broader test that allows a bankruptcy court greater discretion to consider all of the circumstances surrounding a debtor's Chapter 7 filing. *See, Green,* 934 F.2d at 572; *In re Lamanna,* 153 F.3d 1, 5 (1st Cir.1998). The ability of the debtor to repay his debts out of future income is a factor in the court's analysis of substantial abuse, but it is not the only factor. The "totality of the circumstances" analysis "demands a comprehensive review of the debtor's current and potential financial situation." *Lamanna,* 153 F.3d at 4. When applying this analysis, the following factors generally are considered:

(1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) whether debtor made consumer purchases far in excess of his ability to repay;

(3) whether debtor's proposed family budget is excessive or unreasonable;

(4) whether debtor's schedules and statements of current income and expenditures reasonably and accurately reflect debtor's true financial condition; and

(5) whether the bankruptcy petition was filed in bad faith.

*Green,* 934 F.2d at 572. My predecessor, the Honorable Robert J. Woodside, invoked these factors set forth in *Green* and its progeny to decide Section 707(b) motions. *See, In re Lacrosse,* 244 B.R. 583 (Bankr.M.D.Pa.1999).

Other circuits have added other factors to the *Green* test. For instance, the Sixth Circuit in *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989) recommended the following matters for consideration:

whether [a debtor] has engaged in 'eve of bankruptcy purchases,' ... whether ... [he] enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn,* 886 F.2d at 126.

The approach used by the *Krohn* Court has been referred to by other courts and various commentators as a "hybrid" between the positions enunciated in *Kelly* and *Green.* The distinction between the analysis employed in these cases is that *Krohn,* unlike *Green,* holds that a case may be dismissed solely because the debtor has the means to repay his debts, but does not mandate dismissal on this factor alone. *Krohn,* 886 F.2d at 127.

Finally, a few courts have taken a position equally as narrow and restrictive as the *Kelly* court, but in the opposite direction. That is, they have held that the ability to pay creditors or fund a Chapter 13 plan alone never is sufficient to establish substantial abuse. These courts require that evidence of misconduct, impropriety, or lack of good faith in filing is a prerequisite to a finding of substantial abuse. *See, In re Wegner,* 91 B.R. 854, 858 (Bankr.D.Minn.1988); *In re Deaton,* 65 B.R. 663, 665 (Bankr.S.D.Ohio 1986); *In re Shands,* 63 B.R. 121, 124 (Bankr.

---

**7.** Although the "ability to pay" test appears straightforward, various issues arise when the test is applied to facts in a particular case. Issues to be decided include: the ability to fund a Chapter 13 plan, the total amount that could be paid, the percentage of unsecured debt that could be paid, the appropriateness of debtor's deductions from gross income, and the reasonableness of claimed expenses.

E.D.Mich.1985).[8] However, at least one Circuit specifically has rejected this analysis. *United States Trustee v. Harris*, 960 F.2d 74, 76 (8th Cir.1992). More recent cases have not cited this view with approval, and I do not intend to follow it.

 Rather, I find the "hybrid" approach to be the most equitable and the analysis most likely to strike the appropriate balance between the debtor's presumptive right to relief and the rights of creditors. "The hybrid approach ... best resolves the tension between the conflicting policies of granting the debtor a fresh start while thwarting the abuse of consumer credit." *In re Ontiveros*, 198 B.R. 284, 291 (C.D.Ill.1996). The hybrid approach permits the widest latitude to take into account all of the evidence in a case, but it also allows a court to recognize that "[a] vast majority of both courts and commentators have opined that a debtor's ability to pay is the *sine qua non* of section 707(b)." *In re Attanasio*, 218 B.R. 180 (Bankr.N.D.Ala.1998) (collecting cases). A debtor's ability to repay his debts out of future income "is strong evidence of 'substantial abuse.'" *See Green*, 934 F.2d at 572; *Krohn*, 886 F.2d at 126; *Walton*, 866 F.2d at 985; *Kelly*, 841 F.2d at 914–15; see also 6 Lawrence P. King, Collier on Bankruptcy ¶ 707.04[4], at 720 (15th ed. Rev.1998) ("The primary factor that may indicate a substantial abuse is the ability of the debtor to repay the debts out of future disposable income.")

*Lamanna*, 153 F.3d at 4. The hybrid approach also permits a court to examine whether a debtor can repay either a significant *percentage* of his total unsecured debt or a significant *amount* of money, regardless of the percentage payout, to unsecured creditors. *In re Aiello*, 284 B.R. 756, 760 (Bankr.E.D.N.Y.2002), citing, *In re Carlton*, 211 B.R. 468, 477 (Bankr.W.D.N.Y.1997), *aff'd sub nom. Kornfield v. Schwartz (In re Kornfield)*, 214 B.R. 705 (W.D.N.Y.1997), *aff'd*, 164 F.3d 778 (2d Cir.1999). By considering both the percentage and the total amount of unsecured debt that can be repaid, the court neither penalizes debtors who avoid amassing significant debt immediately prior to filing nor rewards those who do.[9]

 In employing this hybrid (or any substantial abuse test), I am well aware of the care which a court must take in order to avoid imposing its own moral values (or ideas about a prudent standard of living) on a debtor, while at the same time protecting the integrity of the bankruptcy system from the dishonest or non-needy debtor. I am also well aware, however, that moral and legal judgments sometimes tread a common path and by no means is a legal decision to be influenced by the fact that it may be perceived to have been a result of a judge's personal moral standards. See, *In re Mastromarino*, 197 B.R. 171, 178–79 (Bankr.D.Maine 1996) (disregard of debtor's voluntary support of his housemate and her children was "not a

8. These cases appear to ignore the precept that Chapter 7 relief is unavailable to the non-needy debtor as well as the dishonest one.

9. As the *Krohn* Court observed, "[t]he anomalous result of saying those whose high unsecured indebtedness renders them ineligible for Chapter 13 treatment can always avoid § 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7. Indeed,

such a bright-line test could be said to encourage debtors to run up unsecured debts in excess of [the statutory limit], thereby avoiding dedication of future earnings to debt retirement under Chapter 13." *Id.*, at 127 (inability to qualify for relief under Chapter 13 should not be dispositive of whether there may be a § 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy.)

moral judgment, but a legal one. To grant such ... expenditures priority over existing legal obligations would be to permit ... [the debtor] unilaterally to subordinate his creditors to his personal lifestyle choices").

### B. Analysis of Circumstances in this Case

■ Movant has not alleged that Debtors can repay all of their debts out of future income, but that Debtors have significant disposable income in excess of their reasonable and necessary expenses that could be used to pay a substantial portion of their debt. Movant asserts that Debtor James Miller should be required to add back to his net income that portion of his "retirement" deduction that he voluntarily contributes—$303.33 per month. Further, Movant argues that Debtor withholds excessive amounts from his taxable income, which would provide additional net income of approximately $260.00 per month.[10] These amounts should be included in income according to Movant, as well as James Miller's voluntary contribution to an "allotment account" of $216.66 per month for car insurance. Finally, Movant argued that the $395.00 per month paid on the "second mortgage" is not a necessary expense because the mortgage is against real estate owned by James Miller's mother, not Debtors' house.

If all of these sums were added back to Debtors' net monthly income, which Movant calculated to be $3,738.45, then Debtors' actual net monthly income would be $4,913.14. After subtracting necessary and reasonable deductions, Debtors' monthly disposable income would be $1,108.44. Movant argues that if only 75% of this sum were dedicated to a Chapter 13

plan, Debtors could make monthly plan payments of $831.00. If payments of $831.00 were committed to a thirty-six month plan, Debtors would be able to pay $29,916.00 or thirty-five percent of their unsecured debt of $85,658.09. Of course, the payout percentage will increase if, as is usually the case, not all unsecured creditors file a proof of claim.

A payout of more than $25,000.00 or one third of unsecured debt is not an insignificant amount to distribute to creditors. In *Attanasio,* the court collected cases dealing with how much a debtor can repay debts before § 707(b) is triggered. *Attanasio,* 218 B.R. at 189 n. 6. From these cases, it appears that many courts have found substantial abuse to exist even when a debtor's potential to repay creditors falls below the 50% mark. In fact, some courts have found substantial abuse to exist where a debtor can pay less than 20% to creditors through a three-year chapter 13 plan. *See, e.g., In re Vianese,* 192 B.R. 61 (Bankr.N.D.N.Y.1996) (substantial abuse where debtors could pay 19% to creditors by eliminating unnecessary expenses). Thus, the ability to pay factor weighs heavily in favor of dismissal of this case in anticipation of its conversion to Chapter 13.

Applying the remainder of the *Green* and *Krohn* factors, I find as follows. The Petition was not filed because of sudden illness, calamity, disability or unemployment. It was filed because Debtors committed all of their disposable income to unsecured debt, assuming they never would be required to bear expenses for housing and utilities. When they were confronted with these responsibilities for the first time in their married lives, they unsuccessfully attempted to meet their ex-

---

**10.** Debtors tax refunds for the two years preceding bankruptcy were in the amounts of $3,655.00 and $2,800.00. $260.00 per month is the result of these two figures added together and divided by 24 months, and then rounded down to the nearest $10.00.

penses for two years before filing for bankruptcy. This fact does not favor Debtors remaining in Chapter 7 in the totality of the circumstances. *See, In re Norris,* 225 B.R. 329, 332–333 (Bankr.E.D.Va.1998)(debtors whose unsecured debts had gradually accumulated "over more than a decade" were not compelled to file in Chapter 7 by sudden calamity, even though primary wage earner had lost an anticipated wage increase when his employer was bought out.)

Debtors made consumer purchases far in excess of their ability to pay. While no single unnecessary purchase or luxury item has been brought to the Court's attention, the total unsecured debt alone shows that, over the years, Debtors had made numerous purchases that they could not afford.

Debtors' proposed family budget is excessive or unreasonable in the following respects: (1) Debtors cannot be permitted to voluntarily contribute to a retirement fund at the expense of their unsecured creditors. *In re Keating,* 298 B.R. 104 (Bankr.E.D.Mich.2003) (sums that Chapter 7 debtor contributed to 401(k) retirement plan did not constitute funds necessary for support and, therefore, had to be included in disposable income for purposes of Section 707(b)).[11] (2) Payment of a mortgage debt on James Miller's mother's house is not reasonably necessary *"for the support and maintenance of the Debtors,"* the specific language of Section 707(b). Thus, while paying off such debt is certainly a moral obligation of the Debtors, it is not one that Section 707(b) recognizes. To the extent that Debtors' budget accommodates the support of their grown children, they are not reasonable and necessary expenses. *See, In re Staub,* 256 B.R. 567, 570 (Bankr.M.D.Pa.2000) (Case dismissed under Section 707(b) in which Judge Woodside noted that expenses for adult children "should not be foisted upon a debtor's pre-petition creditors.") (3) The payments to the "allotment account" should be added back to Debtors' income figure, but only to the extent that these payments are not totally consumed by insurance expenses.

As to the final *Krohn* factor, Debtors do enjoy a very stable and relatively substantial source of future income, and they are eligible for adjustment of their debts through Chapter 13.

The factors that weigh in Debtors' favor are that their schedules reasonably and accurately reflected their true financial condition. They did not engage in any apparent scheme of "eve of bankruptcy purchases." Further, they took the initiative to reduce their expenses by trading in a vehicle with a monthly payment of $495 for one with a monthly payment of $285. There was no evidence to suggest that their Petition was filed in bad faith. However, these factors are not sufficient to outweigh the others in the totality of the circumstances.

### Conclusion

For these reasons, I conclude that dismissal of this case for substantial abuse is proper. However, Debtors are encouraged to convert their case to one in Chapter 13, where they can propose repayment of at least a portion of their debts.

---

**11.** *See also, In re Regan,* 269 B.R. 693, 697 (Bankr.W.D.Mo.2001); *In re Austin* 299 B.R. 482, 487 (Bankr.E.D.Tenn.2003), citing, *In re Cox,* 249 B.R. 29, 32 (Bankr.N.D.Fla.2000); *In re Cohen,* 246 B.R. 658, 665–67 (Bankr. D.Colo.2000); *In re Heffernan,* 242 B.R. 812, 818 (Bankr.D.Conn.1999); *In re Rodriguez,* 228 B.R. 601, 604 (Bankr.W.D.Va.1999); *In re Watkins,* 216 B.R. 394, 396 (Bankr. W.D.Tex.1997)

The Motion to dismiss is hereby GRANTED.