**In re Kathleen K. BELLWOAR, Debtor.**

**No. 03–15455 SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 17, 2003.

Jeffrey Kurtzman, Esquire, Klehr, Harrison & Harvey, Branzburg & Ellers, LLP, Philadelphia, PA, for the Debtor.

Daniel Luke Mcauliffe, Esquire, DrinkerBiddle & Reath, LLP, Philadelphia, PA, for Citibank.

Gary Seitz, Esquire, The Bayard Firm, Wilmington, DE, George Conway, Esquire, Office of The U.S. Trustee, Philadelphia, PA, Chapter 7 Trustee.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### *Introduction.*

Before the Court is the Motion of Citibank, N.A. in which the Bank asks that the instant Chapter 7 case be dismissed for cause under 11 U.S.C. § 707(a). The Motion is opposed in its entirety by the Chapter 7 Debtor, Kathleen K. Bellwoar, and in part by the Chapter 7 Trustee, Gary Seitz, Esquire.[1] A hearing was held on November 6, 2003. For the reasons which follow, the Motion will be denied.

1. The Trustee requests that the case not be dismissed prior to his liquidation of non-exempt property of the Debtor. This request is rather strange, given that dismissal of the case would presumably dissolve the Bankruptcy estate and necessitate return of the property in question to the Debtor.

### Background.

Few facts are in dispute in this contested matter. The events which gave rise to the Debtor's bankruptcy filing were briefly detailed in this Court's Opinion and Order of October 1, 2003, denying Citibank's objections to certain exemptions the Debtor had claimed in a retirement account and in property owned by her and her spouse as tenants by the entireties. To expand thereon, the Debtor is a former partner in the accounting firm of Arthur Anderson, LLP. As is widely known, the Anderson firm closed its doors after having been indicted for its role in the failure of Enron Corporation. The Debtor became an Anderson partner in December 2001, shortly prior to its demise. As is typical in professional partnerships, Mrs. Bellowoar was required to make an equity contribution to the firm as a condition to her admittance. She financed her capital contribution, which was in the original amount of $156,780, through a loan from Anderson Financial Corporation. A copy of her promissory note is Exhibit "A" to Citibank's Motion. It calls for the repayment of the debt, with interest at a rate specified therein, in eight semi-annual installments of $19,598, beginning on May 31, 2004. After the promissory note was executed, it was sold by Anderson Financial to a Citibank affiliate called Charta Corp., but on April 1, 2002, it was sold and reassigned back to Citibank.

Bellwoar's employment with Anderson ended not long after her execution of the promissory note, when the firm ceased operations, and before repayment of any part of the capital contribution had even come due. Her situation, in this respect, was hardly unique. In its pleading, Citibank states that approximately 1200 Anderson partners had an outstanding obligation under a capital contribution note in May of 2002. Citibank states that, in view of the circumstances, it offered an accommodation to former Anderson partners in the form of an option to execute a replacement promissory note on the same or slightly more favorable payments terms.[2] The Bank claims that approximately 1050 former Anderson partners availed themselves of the offer. As a further accommodation, says Citibank, it invited any former Anderson partner to participate in a "financial hardship modification process," if a former partner believed that he or she could not satisfy the terms of the proposed replacement promissory note without suffering an undue financial hardship. In correspondence extending the offer of a replacement note, Citibank advised Bellwoar that if the offer of a replacement note was declined, the Bank would invoke its rights under the original promissory note and accelerate repayment thereof effective as of her service termination date.

Bellwoar did not execute a replacement note, and on October 11, 2002 she received written notice of acceleration from Citibank. Bellwoar commenced this Chapter 7 bankruptcy case on April 9, 2003. Although she is married, Bellwoar commenced her case individually, i.e., without her spouse. At this juncture, Citibank asserts an unpaid obligation on Bellwoar's part in the amount of $159,237.40. In her bankruptcy case, Bellwoar has claimed the exemptions available to her under Pennsylvania state law. This Court has previously determined that virtually all of Bellwoar's assets are exempt under Pennsylvania state law in that they consist of funds in a qualified retirement account and property owned by her as a tenant by the entireties with her spouse. Therefore, with the ex-

**2.** Under Bellwoar's proposed replacement note, her obligation would have become payable in monthly installments of $3,136 beginning October 31, 2003.

ception of a modest amount of non-exempt property, there are no assets for the Chapter 7 Trustee to administer, and hence there will be at best a very small distribution to Bellwoar's creditors.

Citibank contends that Bellwoar's bankruptcy case has been commenced in bad faith and that it should be dismissed for cause under § 707(a) of the Bankruptcy Code. Bellwoar, conversely, contends that her filing is in good faith and that no cause to dismiss it has been demonstrated. The Court concludes that Bellwoar has the better part of this argument.

### Discussion.

■ At the outset, the Court observes that the notion that there is a good faith filing requirement incident to the commencement of a Chapter 7 bankruptcy case is not a universally accepted proposition. *See* Katie Thein Kimlinger and William P. Wassweiler, *The Good Faith Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors*, 13 Bankr.Dev. J. 61, 62–63 (1996). Notwithstanding the existence of differing points of view on the question, in this Circuit it is clear that the absence of good faith is justifiable cause for dismissal of a Chapter 7 case. Controlling authority on point is the decision of the Third Circuit Court of Appeals in *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205 (3d Cir.2000). In *Tamecki*, our Court of Appeals held that § 707(a) allows a bankruptcy court to dismiss a bankruptcy petition for cause if the petitioner fails to demonstrate his good faith in filing. *Id.* at 207 In *Tamecki*, the Court noted that the Bankruptcy Code does not define "good faith," but that courts in this circuit have uniformly held that "at the very least, good faith requires a showing of honest intention." *Id.citing In re Marks*, 174 B.R. 37, 40 (E.D.Pa. 1994). The Court stressed, however, the widely espoused caution that bad faith should not lightly be inferred. Rather, dismissal based on lack of good faith should be confined carefully, and generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and the intention to avoid a large single debt based upon conduct akin to fraud, misconduct, or gross negligence. *See In re Zick*, 931 F.2d 1124, 1129 (6th Cir.1991). Courts are to determine good faith only on an *ad hoc* basis and must decide, said the *Tamecki* Court, whether a petitioner has abused the provisions, purpose or spirit of bankruptcy law. 229 F.3d at 207. As a matter of procedure, once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith. *Id.* The determination of a petitioner's good faith rests within the sound discretion of the Bankruptcy Court. Against the backdrop of these governing precepts, the Court turns to analysis of the present filing.

■ Other than the argument that the circumstances herein demonstrate "cause" for dismissal of the case under § 707(a) of the Bankruptcy Code, no argument can be made that Mrs. Bellwoar's filing violates any particular "provision" of the Bankruptcy Code. Indeed, Mrs. Bellwoar is clearly an individual eligible to have commenced a voluntary Chapter 7 bankruptcy case under § 109 of the Bankruptcy Code. The thrust of the instant challenge to Mrs. Bellwoar's filing rests instead upon Citibank's implicit contention that the filing runs counter to the purpose and/or spirit of bankruptcy law. With this the Court disagrees.

It has been said that a primary purpose of bankruptcy law is to relieve the honest debtor from the weight of oppressive indebtedness. The spirit which animates this purpose is the concept of a fresh start,

which is to say that via a bankruptcy discharge, an individual is given a clear field for future effort free from the obligations and responsibilities consequent upon business misfortune. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) Citibank's argument, in brief, is that this case involves a two party dispute, and that Mrs. Bellwoar is undeserving of bankruptcy relief because together with her husband she owns substantial assets, and because by reason of her background she herself has substantial income earning potential. In these respects, Citibank's pleading, tinged with some sarcasm, reflects noticeable outrage that with her assets and earning capacity Mrs. Bellwoar has failed to avail herself of the opportunity to restructure her debt on the generous terms which Citibank considers itself to have benevolently offered. Assuming the legitimacy of Citibank's premises; i.e., that Mrs. Bellwoar possesses assets and income earning ability, the Court does not agree that these necessarily operate to abrogate Mrs. Bellwoar's entitlement in this setting to seek relief under the Bankruptcy Code.

At the outset, the Court notes that, while Citibank is the largest of but three scheduled creditors of the Debtor, Mrs. Bellwoar has scheduled Arthur Anderson, LLP as a creditor, along with Citibank, and seeks to discharge herein a liquidated monetary claim owed to Anderson, and any contingent liabilities that may attach to her derivatively as a former partner of the firm. The final Chapter has not been written with respect to the collapse of the Anderson firm. In Bellwoar's responsive pleading, for example, the point is stressed that the Anderson firm is facing lawsuits seeking $29 billion in damages related to Enron's collapse. The desire of a freshly minted partner to unequivocally eliminate potential personal liability related to the Anderson firm's financial dilemma is not

an implausible motive for a bankruptcy filing. The Court further notes that, despite Citibank's strident rhetoric, there is not a scintilla of a evidence in this case that points to dishonesty, fraud, misconduct, or gross negligence on the part of the Debtor. On the contrary, the facts of this case are quite straightforward, and it is clear that the Debtor's recourse to bankruptcy is the direct result of a business misfortune for which she bears no discernible culpability. In particular, there has been no concealment or misrepresentation of assets, nor was there any creative or strategic rearrangement or conversion of assets prior to the commencement of this bankruptcy case. Finally, it cannot seriously be argued that the debt in question was incurred to finance a lavish consumer lifestyle. Rather, this was a business debt, pure and simple.

With respect to the question of marital assets, the evidence of record is that, other than her retirement account, Mrs. Bellwoar has always owned all of her assets in a tenancy by the entireties with her spouse. Under applicable non-bankruptcy law, Mrs. Bellwoar has no legal right to exercise unilateral dominion over her marital assets, which are owned just as much by her husband as by her. To the extent that Citibank's motion is predicated on the existence of marital assets alleged to be within Ms. Bellwoar's reach, its argument is thus inaccurate and its grievance misdirected. Again, Mrs. Bellwoar has no entitlement to control of the marital assets in question unless and until the entireties tenancy is broken. These assets accordingly, cannot be viewed as a fund readily available to the Debtor to repay Citibank's claim. Citibank's umbrage appears to be based on the fact that Mr. Bellwoar is apparently unwilling to relinquish the couple's marital assets to Mrs. Bellwoar for the benefit of Citibank. There is, of course, no require-

ment that he do so. To round matters out, the Court emphasizes here that it finds nothing inappropriate, let alone sinister, in a debtor electing the state law exemptions (which protect retirement accounts and entireties property) as she is fully entitled to do under the Bankruptcy Code.

Citibank's argument, vis-a-vis Mrs. Bellwoar's income is, at first blush, more cogent, but in the end it fares no better. In the Bankruptcy Schedules on file in this case, Mrs. Bellwoar reports net monthly income in the amount of $12,481 per month from employment as a consultant with Smart and Associates, LLP. It goes without saying that this is a substantial sum of money. On the same bankruptcy schedules, however, Mrs. Bellwoar reported monthly expenses equal to her income, leaving no disposable income thereafter. Citibank argues that this is too convenient a coincidence, and that it also fails to give weight to the fact that Mr. Bellwoar apparently has substantial income from a law practice and should be allocated some portion of household expenses. Although there is no evidence in the record on the question of household expenses beyond the Debtor's Schedules, Citibank's observations appear well taken, and no doubt the Bellwoars live well. At the evidentiary hearing held on September 29, 2003, however, it was brought out that the Debtor was no longer employed with Smart and Associates, leaving the record unclear at this point as to what income, if any, the Debtor presently earns.

 Of equal, if not greater significance, is the argument that focusing on a debtor's income in evaluating the bona fides of a bankruptcy filing is the normal grist of a motion under § 707(b) of the Bankruptcy Code. Under § 707(b) a Chapter 7 case can be dismissed for substantial abuse where a debtor has significant excess monthly disposable income. *See Philadelphia Inquirer v. Burnley (In re Burnley)*, 1999 WL 717215 *4 (Bankr.E.D.Pa.) ("Numerous courts have held that when the debtor has an ability to repay a substantial portion of his or her debt through a Chapter 13 plan, granting relief to the debtor would constitute a substantial abuse of the provisions of Chapter 7.") Standing to bring such a motion, however, is limited. The United States Trustee (or the Court on its own motion) may bring a § 707(b) motion within sixty days of the date first set for the first meeting of creditors under Bankruptcy Code § 341. *See* F.R.B.P. 1017(e)[3] Creditors, however, are specifically precluded from bringing a motion under § 707(b).[4] In this case, no motion under § 707(b) has been filed by the United States Trustee. Citibank's efforts to draw the Debtor's income earning potential into play in the present context arguably represents an attempt on its part to accomplish via a § 707(a) motion what it cannot accomplish via a § 707(b) motion. This effort accordingly warrants some scrutiny.

In rejecting this aspect of Citibank's argument, the Court does not hold that reference to the Debtor's income earning ability is irrelevant in the context of § 707(a) motion; however, it is by no means dispositive. Where the record is unclear as to whether the Debtor is now even employed, and where there is no evidence whatsoever of improper conduct incident to the bankruptcy filing, the fact of post-petition income, assuming arguen-

---

**3.** The rule provides for an extension of that deadline for cause but requires that such request be likewise made prior to the expiration of that 60 day period. *Id.*

**4.** The rule states that such a motion may not be made "at the request or suggestion of a party in interest." *Id.*

do that it exists, does not alone establish cause for dismissal under § 707(a). Any other holding would largely eviscerate the distinction between § 707(a) and § 707(b), including specifically the standing limitations in the latter subsection. The Court notes furthermore that the Court in *Tamecki*, specifically held that a debtor's ability to repay a debt is not in and of itself sufficient proof of bad faith in filing for Chapter 7 relief and does not necessarily require dismissal of a Chapter 7 petition. 229 F.3d at 208.

In conclusion, the Court acknowledges that this is a somewhat unusual case. It is easily distinguishable, for example, from the more typical consumer cases which feature marital problems, health problems, and/or significant consumer indebtedness. The case is hardly unique, however, in that it is a filing predicated on a business transaction gone bad. The Court does not presume that the decision to cope with this reversal via recourse to a bankruptcy filing was a decision lightly entered into. It appears to the Court, rather, that this filing is the product of an honest intention to achieve a fresh start, free not only from the Citibank obligation, but from the specter of any further fallout from the demise of the Anderson firm. There are none of the obvious badges of fraud present in this case, and it would be contrary to the admonishment to exercise caution in inferring bad faith to find bad faith on these facts. In short, the Court finds that this filing contravenes neither the purpose nor the spirit of bankruptcy law. Citibank's motion, accordingly, will be denied.

An appropriate Order follows.

### ORDER

AND Now, upon consideration of the Motion of Citibank, N.A. for dismissal of the instant Chapter 7 case for cause under 11 U.S.C. § 707(a), the Answer in opposition thereto, and after hearing held November 6, 2003, it is hereby:

ORDERED, that, for the reasons set forth in the within Opinion, the Motion of Citibank, N.A. for dismissal of the instant Chapter 7 case for cause under 11 U.S.C. § 707(a) be and hereby is Denied.