**In re Elaine MOTTILLA, Debtor.**

**Office of the United States Trustee, Movant,**

v.

**Elaine Mottilla, Respondent.**

**No. 1–03–04304.**

United States Bankruptcy Court, M.D. Pennsylvania.

March 8, 2004.

Dorothy L. Mott, Harrisburg, PA, for Debtor.

Gregory R. Lyons, Harrisburg, PA, for Trustee.

## OPINION

MARY D. FRANCE, Bankruptcy Judge.

This matter is before the Court on the Motion of the United States Trustee ("Movant") to dismiss the within case for cause under 11 U.S.C. § 707(a) or for substantial abuse under § 707(b). Movant argues that Debtor's case should be dismissed under § 707(a) because Debtor did not report her income and expenses accurately on her schedules and failed to list her former married name on the petition. Alternatively, Movant asserts that granting relief under Chapter 7 would constitute substantial abuse under § 707(b) because Debtor has disposable income to pay a significant portion of her debts. On December 15, 2003, a hearing was held on the Motion at which time Debtor appeared and testified. The parties were requested to

file briefs, and they have done so. The matter is now ready for decision.[1]

### Findings of Fact

Debtor is divorced and shares joint custody of her two children, ages twelve and sixteen, with her ex-husband. During her marriage Debtor was known by her married name, Zellers, but since her divorce in December 2001 resumed her maiden name, Mottilla. Since 2001, she has been employed by a business known as Keystone Properties. Neither her educational background nor the nature of her work is of record.

In the divorce, Debtor assumed some of the marital credit card debt in exchange for which her ex-husband assumed the mortgage on the marital home. Debtor's Schedule "F" shows unsecured debts totaling $134,979.00. Of this amount, $94,833.00 is attributable to the mortgage on the marital home, which her ex-husband has kept current.

Debtor has a gross annual salary of approximately $65,000.00 with monthly net income of approximately $3,555.00. In addition to her earned income, Debtor receives child support from her ex-husband in the amount of $920.00 per month. Thus, her total household monthly income is $4,475.00.[2] Debtor filed a full set of schedules with her petition, but later amended her schedule of expenses after the United States Trustee challenged the accuracy of the information in the original

---

1. I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

2. Debtor's Schedule "I" states that her monthly net income is $4,900.00. The reason for the discrepancy between the net income figure presented in testimony and the information in her schedules was not explained by Debtor.

schedules. Amended Schedule "J" includ-
ed the following adjustments:

| Expense | Initial | Amended | Difference |
|---------|---------|---------|------------|
| Electricity and heating | $650 | $375 | $275 Decrease |
| Water and sewer | $70 | $75 | $5 Increase |
| Telephone | $40 | $50 | $10 Increase |
| Home maintenance | $50 | $100 | $50 Increase |
| Clothing | $40 | $200 | $160 Increase |
| Laundry and dry cleaning | $20 | $40 | $20 Increase |
| Transportation | $200 | $450 | $250 Increase |
| Recreation | $300 | $500 | $200 Increase |
| Health Insurance | $0 | $90 | $90 Increase |
| Auto Insurance | $130 | $200 | $70 Increase |

Debtor explained that the increase in transportation costs is attributable to the expenses incurred by her daughter, who now has her own vehicle. Although the costs of operating the vehicle are the responsibility of her daughter, Debtor contributes to maintenance costs. In her testimony, Debtor conceded that the amount listed for transportation costs had not been reduced by the amount reimbursed by her employer, which varies from month to month, but may exceed $200.00 per month.

Another expense item that was significantly increased when Debtor filed amended schedules were recreational expenses. Debtor's children play organized soccer in the Philadelphia area, and most of her recreational expenses are attributable to transportation costs related to attending their events.

### Discussion

Movant argues that dismissal is appropriate under either § 707(a) or § 707(b). A threshold question to be resolved is whether both subsections of § 707 may be analyzed under the same criteria or whether different considerations apply. The bankruptcy courts are not in total agreement on that issue. Some courts have

said, without any particular analysis, that the two sections are to be similarly applied. *In re Stewart*, 215 B.R. 456, 463 (10th Cir. BAP 1997) ("dismissal power under § 707(b) is not essentially different from ... §§ 105(a) and 707(a) of the Code"); *In re Collins*, 250 B.R. 645, 653 (Bankr.N.D.Ill.2000)("appropriate test for dismissal pursuant to § 707(a) is the 'mainstream' totality of the circumstances test employed in other Circuits for dismissal under both § 707(a) and § 707(b)"); *In re Keniston*, 85 B.R. 202 (Bankr.D.N.H.1988).

Other courts have concluded that the subsections are distinct and that a dismissal for cause cannot be grounded on the same set of facts as dismissal for substantial abuse. For instance, in *In re Khan*, 172 B.R. 613 (Bankr.D.Minn.1994), the court discussed at length the difference between the subsections and concluded that because subsection (b) was intended to address those cases where a debtor could repay debt, subsection (a) must have been intended to address something else. The *Khan* court specifically held that a debtor's ability to repay debt from future income is irrelevant when analyzing cause for dismissal under § 707(a). *Id.*, 172 B.R. at 623–24.[3] While reaching the same con-

---

**3.** In *Khan*, the court found support for this position in the legislative history of § 707(a) and in general principals of statutory con-

struction. The legislative history of § 707(a) states that "[707(a)] does not contemplate, however, that the ability of a debtor to repay

clusion as *Khan* regarding the dissimilarity between the two subsections, the Court in *In re Motaharnia*, 215 B.R. 63, 67 (Bankr.C.D.Cal.1997) made the following observations from the statutory history.

> Although the legislative history does not specify why section 707(b) was enacted as a separate subsection rather than as an additional category to the original § 707, it appears that this was done because § 707(b) was meant to establish different standards for dismissal than those now included in § 707(a). Section 707(a) is quite broad in that it permits dismissal for cause; however, as indicated by the enumerated factors in § 707(a)(1)–(3), that provision is geared toward maintaining the integrity of the bankruptcy process. In contrast, § 707(b) was created to provide the court with a tool to prevent the discharge of debt owed by nonneedy consumer debtors and to deal equitably when an unscrupulous consumer attempts to use the bankruptcy court as part of a scheme to take unfair advantage of his creditors.

*Id.*, 215 B.R. at 67, citing, *In re Green*, 934 F.2d 568, 570 (4th Cir.1991). Contrary to the holding in *Khan*, at least one court in the Third Circuit has concluded that both subsections of § 707 may consider the existence of disposable income.

> [T]he Court does not hold that reference to the Debtor's income earning ability is irrelevant in the context of § 707(a) motion (sic); however, it is by no means dispositive. [W]here there is no evidence whatsoever of improper conduct

incident to the bankruptcy filing, the fact of post-petition income, assuming arguendo that it exists, does not alone establish cause for dismissal under § 707(a). Any other holding would largely eviscerate the distinction between § 707(a) and § 707(b), including specifically the standing limitations in the latter subsection. The Court notes furthermore that the Court in *Tamecki*, specifically held that a debtor's ability to repay a debt is not in and of itself sufficient proof of bad faith in filing for Chapter 7 relief and does not necessarily require dismissal of a Chapter 7 petition. *In re Bellwoar*, 302 B.R. 346, 350 –351 (Bankr.E.D.Pa.2003). See also, *In re Maide*, 103 B.R. 696 (Bankr.W.D.Pa.1989).

 This Court concludes that the two subsections do not necessarily require consideration of mutually exclusive criteria. Thus, issues related to a debtor's income and expenses may be part of the analysis under either subsection. However, the examination of the debtor's intent relative to his reporting of income and expenses is clearly different under each provision. Under Section 707(a) the existence of disposable income is considered *in the context of whether or not the debtor showed bad faith by artificially inflating expenses or by intentionally concealing income sources*. The mere existence of disposable income is not determinative. *In re Tamecki*, 229 F.3d 205, 208 (3d Cir. 2000) (The reasonableness of the accrual of debt and the timing of the filing of the petition, not the per se ability to repay debts suggested lack of good faith.) Un-

---

his debt in whole or in part constitutes adequate cause for dismissal." H.R. Rep. 95–595, 95th Cong. 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong. 2nd Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6336, 5787, 5880. Applying the rule of statutory construction that the specific prevails over the general, the *Khan* court rea-

soned that § 707(b) was enacted to address situations in which debtors had future income to repay debts. Since Congress explicitly provided that § 707(b) applies only to consumer debt, it did not intend that the same criteria would be employed in evaluating cases under the broader "cause" standard of § 707(a).

der Section 707(b) disposable income is considered *in the context of a debtor's ability to pay debt or fund a Chapter 13 plan* weighed with other factors as part of a totality of the circumstances analysis. Issues like timing of the bankruptcy filing in relation to an anticipated windfall (see e.g. *Tamecki*) are relevant in both Section 707(a) and (b), as are issues like a precipitous increase in credit card usage relative to income shortly before the petition is filed. The overall distinction to be made between the two subsections is that § 707(a) focuses *on the debtor* and particularly his intent ("good" or "bad" faith) in filing. Section 707(b) focuses *on the purpose of Chapter 7 relief under the Bankruptcy Code*, primarily the issue of whether the petitioner is the honest and needy consumer debtor the Code was intended to protect.

### Cause for dismissal under § 707(a)

■ Filing a petition in bad faith can be cause for dismissal under 11 U.S.C. § 707(a). *Tamecki, supra.*[4] The good faith of a debtor is presumed at the time she files her petition, but it may be called into question by a party in interest who presents evidence "sufficient to impugn" her good faith. *Id.*, at 207, fn. 2. The burden then shifts to the debtor to prove good faith, which, "at the least, requires a showing of honest intention." *Id.*, at 207. "Dismissal based on lack of good faith

should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Id.* quoting *In re Zick*, 931 F.2d 1124, 1129 (6th Cir.1991).

■ In the instant case, Movant's proof to impugn Debtor good faith is primarily found in Debtor's original and amended schedule of expenses, which Movant has shown to have been inflated in some respects. Movant also showed that Debtor's statement of financial affairs falsely stated that she had no earned income for the two years preceding bankruptcy when in fact she had earned $18,809.00 in 2001 and 64,673.00 in 2002. Movant argues that Debtor intentionally inflated figures on her amended schedule of expenses and asserts that there is bad faith in Debtor's failure to make an accurate reporting in the original documents. As evidence of bad faith, Movant also points to Debtor's failure to include her married name on her petition.[5]

Movant offered evidence of bad faith, but it is not clear what quantity or quality of evidence the Third Circuit would deem sufficient to impugn a debtor's good faith and shift the burden to the debtor to defend her intentions. Under *Tamecki*, can a movant can satisfy its burden with, for

4. Although this court is bound by the Third Circuit's holding in *Tamecki*, the Circuits are split on the issue of whether Chapter 7 debtors are required to file petitions in "good faith." See, *In re Zick*, 931 F.2d 1124 (6th Cir.1991) (finding a duty of good faith); *In re Huckfeldt*, 39 F.3d 829 (8th Cir.1994) (bad faith alone does not justify dismissal); *In re Padilla*, 222 F.3d 1184 (9th Cir.2000)(good or bad faith irrelevant in Chapter 7 case).

5. Debtor had a duty to list all other names she used during the six-year period immediately prior to her bankruptcy. However, Movant

fails to cite one case, and the Court has found no instance in which a debtor's omission of a married name or maiden name from her petition was a factor in a dismissal under § 707(a). Movant's brief offers no argument as to what unfair advantage Debtor might have gained by such omission. Lacking any precedent or legal rationale for finding evidence of bad faith in the omission of a former name and hearing no evidence of fraudulent intent, the Court will not consider this factor further.

example, any evidence of inaccuracies in the schedules and thereby shift the burden to the debtor? Can a movant shift the burden with simple mathematical evidence of disposable income? The Court has its doubts about whether either scenario is what *Tamecki* contemplated.

■ After scrutinizing the *Tamecki* decision, I can only conclude that the Circuit requires a movant to produce relatively little evidence to place a debtor's good faith at issue. Therefore, for purposes of assigning the burden under the instant facts, I find that the errors in Debtor's schedules and the increased amounts of certain expenses on Schedule J filed in response to the Motion sufficient to impugn Debtor's good faith and shift the burden to her to produce affirmative proof of her honest intention in filing her petition.

■ To meet her burden, Debtor testified that she met with her attorney prior to filing her petition and answered the questions that he asked her as truthfully as she could. She explained that some of the inaccuracies in her original schedule of expenses were due to the fact that she was only asked to provide some figures "in the ballpark" of the actual expenditures.[6] Debtor further explained that after the trustee inquired about the inaccuracies she purposely made a conscientious effort to calculate more precise amounts. The

Court is not inclined to disbelieve any of these assertions as far as they go, but they leave several questions unanswered. Were the "more precise" figures intentionally inflated?[7] Were any of the original, unamended figures intentionally inflated? Was Debtor's pre-petition lifestyle a lavish one (relative to her income) that she funded with unsecured debt? These questions and other issues to be discussed below go to the heart of whether Debtor has proven her good faith in filing the instant Petition.

In evaluating whether Debtor has met her burden, the Court has found certain tests set forth in *In re Khan, supra* and *In re Spagnolia,* 199 B.R. 362 (Bankr. W.D.Ky.1995) to be helpful. These cases, like *Tamecki,* employ a shifting burden of proof. The *Khan* test is as follows:

> Bad faith in the filing of a Chapter 7 petition would be evidenced by a pervasive and orchestrated effort on the part of the debtor to obtain the benefits of a bankruptcy filing while at the same time intentionally and fraudulently taking action to avoid any of the detriments.... Of necessity, a "bad faith filing" would involve manifested dishonesty toward a legal tribunal.

> Pre- or post-filing actions in connection with the bankruptcy case that could support the finding would consist of systematic and deliberate misstatements or

---

**6.** In her testimony, Debtor blithely used the word "ballpark" three times to describe her method of calculating some items in her original schedules. She stated that when she met with her attorney, he asked her for "ballpark" figures as he prepared her schedules. Both debtors and debtors' counsel alike should understand that the preparation of schedules, like any other sworn document, requires the most precision counsel and their clients can muster. Unsupported guesses are unacceptable.

**7.** In *In re Haffner,* 198 B.R. 646 (Bankr.D.R.I. 1996) the court made this pithy observation: "as in most instances where the debtor is confronted with a 707(b) motion to dismiss, the Court was promptly supplied with an allegedly *more accurate,* or *more carefully crafted* version of the debtor's expenses. We will borrow Judge Hillman's generous and temperate comment ... that we must regard the amended schedule 'as Debtor's most determined effort to reduce the amount of excess income.' " *Id.,* at 649, quoting, *In re Snow,* 185 B.R. 397, 399 (Bankr.D.Mass.1995)(emphasis in original).

omissions on bankruptcy schedules; knowingly false testimony at a meeting of creditors or a court hearing; and intentional acts to hinder the trustee in the administration of the estate and the investigation in connection with it. To taint the whole filing, there should be something more than an isolated instance or two of such conduct.

*Khan,* 172 B.R. at 625 fn. 23. The *Spagnolia* court set forth a more particularized list of considerations that would support dismissal under § 707(a):

> (1) the debtor reduced his creditors to a single creditor in the months prior to filing his petition; (2) the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle; (3) the debtor filed the case in response to a judgment pending litigation ...; (4) the debtor made no effort to repay his debts; (5) the unfairness of the use of Chapter 7; (6) the debtor has sufficient resources to pay his debts; (7) the debtor is paying debts to insiders; (8) the schedules inflate expenses to disguise financial well-being; (9) the debtor transferred assets; (10) the debtor is overutilizing the protection of the Code to the unconscionable detriment of creditors; (11) the debtor employed a deliberate and persistent pattern of evading a single major creditor; (12) the debtor failed to make candid and full disclosure; (13) the debts are modest in relation to assets and income; and (14) there are multiple bankruptcy filings or other procedural "gymnastics."

*Spagnolia,* 199 B.R. at 365. "Generally, the presence of only one of these factors is not sufficient to support a § 707(a) dismissal." *Id.;* see also, *In re Keobapha,* 279 B.R. 49, 52 (Bankr.D.Conn.2002). While *Khan* and *Spagnolia* espouse different philosophies of statutory interpretation and distinctive definitions of "cause," both

find that a debtor's pre-petition conduct toward her creditors and candor toward the court are significant factors to be considered. I will apply the factors set forth in these two cases to the instant facts with those common themes in mind.

The *Khan* factors apply to the instant case as follows. The evidence supports a finding that Debtor misstated and omitted material information from her schedules. While her expenses seem excessive and the omission of information about her income in the years immediately prior to filing is unacceptable, I have difficulty finding that the misstatements and omissions are sufficiently significant to taint the filing. One of the reasons for my difficulty is that in the amended Schedule "J", Debtor in fact *decreased* (by nearly $300) one of her expenses—hardly evidence of a good "system" of inflating expenses. More generally, malicious deliberateness was neither evident in Debtor's demeanor on the stand nor presumable through the substance of the Movant's evidence. In addition, there is no evidence of intentionally false testimony at the 341 meeting or before this Court, and there is no evidence that Debtor acted to hamper the United States Trustee's office in the course of its investigation. There was insufficient evidence to demonstrate a "pervasive and orchestrated effort" to avoid the detriments of bankruptcy. Thus, I conclude that under the *Khan* test, there would be insufficient cause to justify dismissal under Section 707(a).

I reach a similar result when the *Spagnolia* factors are applied to the evidence in this case. Debtor did not reduce her creditors to a single creditor prior to filing her petition. She is not paying debts to insiders. She did not transfer assets. She did not employ a deliberate and persistent pattern of evading a single major creditor. Her debts are not modest in relation to

assets and income. She is not a "serial filer." Although Debtor has not made many lifestyle adjustments to "free up" income to repay her debts, she did return an unnecessarily expensive vehicle once she realized that she could not afford the payments.

Several significant *Spagnolia* factors, however, weigh against the Debtor. She retained unnecessary expenses like cellular telephones for both her children and premium cable channels and, if her schedule is accurate, continued to spend excessively for food and recreation. In that sense, she is over-utilizing the protection of the Code to the detriment of creditors. Some of her expenses, such as maintenance costs for her rented home, are inflated, but it is not clear that these amounts were intentionally increased to disguise her financial well being. Debtor did not testify about her efforts to repay her debts. The burden of proof having been shifted to her, and the information about her repayment efforts being clearly more accessible to her than to Movant, her failure to so testify weighs against her. *See, Tamecki*, 229 F.3d at 208 (Alito J., concurring). The factors that support the Motion have as a common nucleus Debtor's failure to accurately and completely disclose all relevant financial information. This failure, though not insignificant, does not demonstrate egregious behavior akin to concealing assets or sources of income, maintaining a lavish lifestyle, or attempting to avoid a large debt incurred as the result of fraud, misconduct or gross negligence. Therefore, the Motion to Dismiss under § 707(a) is denied.

### Substantial Abuse under § 707(b)

The relevant section of the Bankruptcy Code provides as follows:

[T]he court . . . may dismiss a [Chapter 7] case . . . if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

"The Bankruptcy Code does not define the term 'substantial abuse.' Therefore its meaning is to be determined by the courts. Whether such abuse exists in a case is largely left to the court's discretion." *In re Miller*, 302 B.R. 495 (Bankr.M.D.Pa.2003), *citing, In re Bacco*, 160 B.R. 283, 288 (Bankr.W.D.Pa.1993). "Section 707(b) has always been intended, at least in part, to balance the interests of a debtor who cannot pay his debts as they come due against a creditor's interest in obtaining repayment of at least a portion of the debts if such repayment would not be a burden." Ann Morales Olazabal, *Consumer Bankruptcy Reform and 11 U.S.C. § 707(b): A Case-based Analysis*, 12 B.U. Pub. Int. L.J. 317, 326–27 (2003).

As I discussed in *In re Miller*, supra, this Court employs the "hybrid approach" to the totality of circumstances test. The hybrid approach permits the widest latitude to take into account all of the evidence in a case, but it also allows a court to recognize that "[a] vast majority of both courts and commentators have opined that a debtor's ability to pay is the *sine qua non* of section 707(b)." *In re Attanasio*, 218 B.R. 180 (Bankr.N.D.Ala. 1998) (collecting cases). In addition to a debtor's ability to repay his debts, the following factors also are considered:

(1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) whether debtor made consumer purchases far in excess of his ability to repay;

(3) whether debtor's proposed family budget is excessive or unreasonable;

(4) whether debtor's schedules and statements of current income and expenditures reasonably and accurately reflect debtor's true financial condition; and

(5) whether the bankruptcy petition was filed in bad faith.

*Id.*, at 500, citing *In re Green,* 934 F.2d 568, 572 (4th Cir.1991), *In re Lacrosse,* 244 B.R. 583 (Bankr.M.D.Pa.1999). Other circuits have added other factors to the *Green* test. For instance, the Sixth Circuit in *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989) recommended the following matters for consideration:

whether [a debtor] has engaged in 'eve of bankruptcy purchases,' ... whether ... [he] enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn,* 886 F.2d at 126. "By considering both the percentage and the total amount of unsecured debt that can be repaid, the court neither penalizes debtors who avoid amassing significant debt immediately prior to filing nor rewards those who do." *Miller,* 302 B.R. at 500. "[M]any courts have found substantial abuse to exist even when a debtor's potential to repay creditors falls below the 50% mark. In fact, some courts have found substantial abuse to exist where a debtor can pay less than 20% to creditors through a three-year chapter 13 plan." *Id.* at 501, *citing, Attanasio,* 218 B.R. at 189 n. 6; *In re Vianese,*

192 B.R. 61 (Bankr.N.D.N.Y.1996) (substantial abuse where debtors could pay 19% to creditors by eliminating unnecessary expenses).

■ Applying the totality of the circumstances factors, I find that granting Debtor relief under Chapter 7 would constitute substantial abuse of Chapter 7. Debtor's Petition was not filed because of sudden illness, calamity, disability or unemployment. It was filed primarily because Debtor wanted to rid herself of liability on the mortgage obligation on the marital home, which amounts to some $94,000.00. There is no evidence that Debtor made any single purchase (aside from the vehicle which she already returned) far in excess of her ability to repay. Her proposed family budget is excessive and unreasonable. Between the original and amended schedules, Debtor doubled her allowance for home maintenance, although she was still residing in the same house. She rents this house, yet she asks the Court to believe that she makes a capital investment of $1,200.00 per year into it. In reality, Debtor's home repair costs should be minimal. Debtor also alleges that she must spend $840.00 per month for food. This would be a reasonable amount if she had full-time custody of her children. In reality she shares custody, and her food allowance is inflated. Similarly, Debtor artificially inflated her transportation expenses by failing to deduct from that amount the travel expenses that her employer reimburses. Debtor also inflated her reasonable recreation expenses. Five hundred dollars per month for recreation is clearly excessive in bankruptcy.[8] Debtor's auto insurance expense

---

**8.** *See e.g., In re Kelly,* 841 F.2d 908 (9th Cir. 1988) ($500.00 recreation expense excessive); *Waites v. Braley,* 110 B.R. 211 (E.D.Va.1990) (cable television and recreation expense of $240.00 excessive); *In re Siemen,* 294 B.R. 276 (Bankr.E.D.Mich.2003)($220.00 recreation expense excessive for a family of six). *In re Downin,* 284 B.R. 909 (Bankr.N.D.Iowa

is inflated by $70.00. She testified that she erroneously included non-recurring deductibles in her calculation. She did not amend the amended schedule to correct this error, but chose to leave it to the Movant to try to flush out in the course of this proceeding. Thus, Debtor's statements and schedules do not accurately reflect her true financial condition. Debtor did not engage in any "eve of bankruptcy" purchases. She enjoys a stable source of future income and is eligible for Chapter 13. The record does not disclose whether Debtor may avail herself of any state remedies or private negotiations to ease her financial situation. Her expenses can be reduced without depriving her of necessities.

Thus, the majority of these factors weigh against Debtor. Therefore, in the totality of the circumstances, I conclude that granting relief to the instant Debtor under Chapter 7 would constitute a substantial abuse of that chapter.

### Conclusion

Dismissal of this case for substantial abuse is proper. Debtor is encouraged to convert her case to one in Chapter 13, where she can propose repayment of at least a portion of her debts.

The Motion to dismiss is hereby GRANTED, but dismissal of the case shall be delayed for ten days to allow Debtor the opportunity to convert her case to Chapter 13.

2002) ($125 per month for family of 3 excessive and expenses for items such as cable internet access, cell phones, and satellite television could also be reduced); *In re Smith,*

269 B.R. 686 (Bankr.W.D.Mo.2001) ($150.00 per month recreation expense for family of three excessive).